J. G. KLINTWORTH, Tinye K. Hunt and Aelize K. Hughes, Plaintiffs,

v.

ATLANTIC COAST LINE RAILROAD COMPANY, Defendant.

No. CA/8610.

United States District Court
D. South Carolina,
Charleston Division.

Jan. 26, 1966.

Joseph A. Newell, Moncks Corner, S. C., for plaintiffs.

A. Baron Holmes, III, Charleston, S. C., for defendant.

WYCHE, District Judge.

The above case is before me upon (1) motion of the plaintiffs for voluntary dismissal, without prejudice; (2) defendant's motion for summary judgment, and (3) other motions which are not necessary here to recite.

I shall first consider the motion of plaintiffs for voluntary dismissal, without prejudice.

The original complaint in this action was filed in the Court of Common Pleas for Berkeley County, South Carolina, dated February 4, 1965, and served on the defendant on February 12, 1965, and thereafter removed to this Court. The defendant served and filed a notice with motions attached (1) to dismiss for failure to state a claim; (2) to dismiss on the ground of the statute of limitations; (3) to dismiss on the ground of laches; (4) to strike; (5) for a more definite statement; (6) to elect; and, also a motion for production of documents for inspection, copying or photographing, and for permission for defendant to inspect, survey and photograph the lands of plaintiffs, and specifically setting forth the documents and dates of same; also, a notice of the taking of the depositions upon oral examination of the plaintiffs; also, a request for admission of genuineness of documents setting forth the documents as to which the admission of genuineness was denied.

The case came on for hearing before me upon the several motions of the defendant to dismiss, to strike, for a more definite statement and to elect, and on eral motion of the plaintiffs to file and serve an amended complaint.

I allowed the motion of the plaintiffs to file and serve an amended complaint and entered an Order in which it was stated, "It appears to this Court that the Plaintiffs should be allowed to serve and file an Amended Complaint, and the right of the Defendant to renew its various motions with respect to the Amended Complaint is, of course, preserved by the Rules." The Order further provided that the plaintiffs should have ten days from the service of a copy of the Order in which to serve upon the defendant's attorneys an amended complaint, and that the defendant should have twenty days from the service of the amended complaint in which to file and serve responsive pleadings.

The various other motions were not argued at that time.

The plaintiffs served and filed an amended complaint dated July 26, 1965. The defendant served and filed a notice and motions dated August, 1965, (1) to dismiss on the ground of the statute of limitations; (2) to dismiss on the ground of laches and estoppel; (3) to strike; (4) for a more definite statement; (5) to elect; (6) to require separate counts in the amended complaint; (7) for summary judgment.

Prior to the hearing of the motions the plaintiffs' attorneys admitted the genuineness of the documents called for in the motion, and the deposition of the plaintiff J. G. Klintworth was taken and filed and the documents, of which the genuineness was admitted, were identified by the plaintiff J. G. Klintworth and marked for defendant's identification. The testimony of the plaintiff J.

G. Klintworth, and the exhibits marked for identification at the taking of the deposition, together with the affidavits of S. Turner Watson and Carmer L. Davis, Jr. were fully argued before me at the hearing of the motions.

■■ Except where plaintiff voluntarily dismisses action before service of answer or motion for summary judgment by defendant, or by filing stipulation of dismissal, granting or denying of voluntary dismissal, without prejudice, is a matter of judicial discretion. The purpose of the rule permitting plaintiff voluntarily to dismiss action without prejudice is to give plaintiff right to take case out of court when no one else would be prejudiced thereby. Federal Rules of Civil Procedure, Rule 41, 28 U.S.C.A. This rule was thoroughly discussed by the late Judge Morris A. Soper in the case of Piedmont Interstate Fair Ass'n v. Bean, (CA4, 1954) 209 F.2d 942.

Applying the principles of law as laid down by Judge Soper in Piedmont Interstate Fair Ass'n v. Bean, supra, and considering the original complaint, the documents admitted by the plaintiffs as being genuine, the deposition of plaintiff J. G. Klintworth, who is admittedly the sole plaintiff having knowledge of this matter, the affidavits of Carmer L. Davis, Jr. and S. Turner Watson on behalf of the defendant, and the memoranda of the defendant in regard to the original complaint and the amended complaint, it will readily be seen that the defendant would be greatly prejudiced in the event the motion for dismissal without prejudice is granted.

■ On a motion to dismiss the Judge should weigh the equities and make that decision which seems fairest under all the circumstances.

For the foregoing reasons, I must deny the motion of the plaintiffs to dismiss, without prejudice, and

■ It is, therefore, ordered, that the motion of the plaintiffs for a voluntary dismissal, without prejudice, in the above case, be and the same is hereby denied.

I shall next consider defendant's motion for summary judgment.

The deposition of the plaintiff J. G. Klintworth shows that he owned fifty-eight acres of land, of which only twenty acres are involved in this suit and which he claims are damaged; that the twenty acres are on the western side of the tract of land next to the railroad right of way and involves the center of the western part of the twenty acres; that he is the only one who planted the lands and the crops were solely his and he started planting the land in 1931, and that he operated the dairy from 1931 to 1958; he could not state what acreage was planted by him during the years 1959, 1960, 1961 and 1962, of the twenty acres, or exactly what crops were planted thereon or the value of the crops; that he planted no crops in 1963, 1964 and 1965, as the ground was too wet; he had allotments from the Government as to cotton and tobacco but he did not know what part of these allotments were planted on the twenty acres or on the balance of the fifty-eight acres, or on an additional one hundred, thirty-five acres, which he personally owned adjacent to the fifty-eight acres owned by the plaintiffs; that the only records he kept were as to the whole farm, that is, the fifty-eight acre tract owned by the plaintiffs and the one hundred, thirty-five acre tract owned by him individually; that he conferred with his attorney prior to filing the original complaint and the amended complaint but, on objection by his attorney, refused to testify as to what he told his attorney; that surface water was water that flows on the ground and settles and goes into these low places and have no outlet practically and that a natural drain is a natural waterway and a natural waterway is a means by which water which flows leads into a larger stream; that a natural drain is the same as a natural waterway;

that a natural stream is a branch or low place in a river; that the first time he made a complaint to Atlantic Coast Line Railroad Company of the backing up of water on the fifty-eight acre tract was in 1931, and this was only in regard to the twenty acre tract; that in 1931, he complained about blocking of a natural stream or natural water and that he complained of the backing up of surface water each time and he conferred with representatives of the railroad on several different times but he did not know the dates; he testified as to the question of moving the road between the fifty-eight acre tract and the railroad and digging a ditch adjacent to his line, for the Soil Conservation Service to dig the ditch and pay him the cost but when he would not allow it on his land, the Soil Conservation Service would not pay for the ditch being built on the Coast Line land and there was a second plan regarding ditches but this was never done; that he refused to have the ditch cut on his land but only agreed for the Coast Line to cut it provided they would maintain it; that several surveys had been made prior to 1958; that he had conversations with the railroad every year since 1930, trying to work out a solution to his problem and the last time he wrote the railroad was through his attorney in 1957 or 1958; that the backing up of the water caused a taking of the land without just compensation and this occurred before he was born and that the injury to the land as it now stands is permanent and has been so for many years and since 1930, and has been getting worse each year gradually; that the water backed up onto his lands was into the low places #2, #3, and #4 (shown on map dated November 25, 1957, produced by him and on which he placed the identifying marks), and that the water comes into the area starting at the northwest corner of the fifty-eight acre tract down to point #3; that points #2, #3 and #4 are covered with water but there is seepage backing up around these points into the ground from point #1 to point #2 and that the condition is continuous and permanent and getting worse; that the filling up of the ditch was causing the damage to his property and that the water backing up onto his land was surface water; that for two years he kept his ditch clean and then quit; that the ditches collect the water and take it onto the railroad right of way.

This is a statement of plaintiffs' claim in the words of the plaintiff, who admittedly is the sole plaintiff having knowledge of this matter. This is not the opinion or testimony of an outside witness.

A similar situation was before the Seventh Circuit Court of Appeals in Repsold v. New York Life Ins. Co., (CA7, 1954) 216 F.2d 479, where defendant moved for summary judgment on the pleadings and upon plaintiff's discovery deposition, which defendant had taken. The Court, holding that defendant was entitled to summary judgment said, "In the case at bar it appears from * * * the sworn deposition of plaintiff that the material facts are uncontroverted."

In another similar situation in Bennett v. Flanigon, (CA7, 1955) 220 F.2d 799, the same Court said, "Thus it affirmatively appears that his claim stated on paper became completely disintegrated when exposed to the light of his own deposition. We need enter into no lengthy discussion of summary judgment practice, for it affirmatively appears that no issue as to any material fact remains in the case."

At the taking of the deposition of the plaintiff J. G. Klintworth, the attorneys for the plaintiffs did not examine deponent, or in any way attempt to confirm the allegations of the amended complaint, or introduce any records of the plaintiffs in substantiation of plaintiffs' claim. At the hearing of the motions before me the plaintiffs did not furnish any af-

fidavits on behalf of the plaintiffs to contradict or enlarge on the testimony of J. G. Klintworth or the affidavits or the documents presented by the defendant.

The affidavits, the deposition and the answers to requests for admissions submitted by the defendant, have not been denied by the plaintiffs, and, I, therefore, find them as facts in this case.

Rule 56(c), Federal Rules of Civil Procedure, provides that the adverse party prior to the day of hearing may serve opposing affidavits, and Rule 56(e) provides that when a motion for summary judgment is made and supported as provided in the rule, the adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in the rule, must set forth specific facts showing that there is a genuine issue for trial, and if he does not so respond, summary judgment, if appropriate, shall be entered against him.

It is perfectly clear that no issue of fact is involved in this controversy, and inquiry into the facts is not desirable to clarify the application of the law. There is no dispute as to the conclusions to be drawn from the evidentiary facts in this case. The Supreme Court of the United States in the case of Sartor v. Arkansas Natural Gas Co., 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967, said: "Rule 56 authorizes summary judgment only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, that no genuine issue remains for trial, and that the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try."

In this case it is clear to me that the defendant is entitled to judgment as a matter of law.

█ It is, therefore, ordered, that the motion of the defendant for summary judgment in the above case be and the same is hereby granted.