Edward Emanuel SHELDON, Plaintiff,

v.

AMPEREX ELECTRONIC CORPORA-
TION, Defendant.

No. 70-C-930.

United States District Court,
E. D. New York.

March 29, 1971.

**2**

Cooper, Dunham, Henninger & Clark, New York City, by R. Bradlee Boal, New York City, Lerner, David & Littenberg, Newark, N. J., for plaintiff; Sidney David, Newark, N. J., of counsel.

Darby & Darby, New York City, attorneys for defendants, by Morris Relson, and Gerald H. Kiel, New York City.

ZAVATT, District Judge.

The defendant moves to strike a notice of dismissal filed in this court by plaintiff on July 28, 1970 and to vacate the order entered thereon. The motion is denied.

*Facts*

This patent infringement case was instituted by Edward Emanuel Sheldon (Sheldon) on March 6, 1969 in the United States District Court for the Northern District of Illinois, Eastern Division. Sheldon, a resident of New York, is the alleged holder of a patent for a television camera tube used primarily in televising color scenes. Four parties were named as defendants in the complaint: Amperex Electronics Corporation (Amperex), which allegedly manufactures the tube; Newark Electronics Corporation (Newark), a distributor for Amperex; Field Communications Corporation (Field) and WLS Incorporated (WLS), both alleged users of the challenged tube. In an amended complaint, filed in the Northern District of Illinois on May 6, 1969, WLS was dropped as a party-defendant and American Broadcasting Companies, Inc. (ABC), the owner and operator of WLS–TV, a Chicago television station, was added.

None of the defendants filed an answer to the complaint in the Illinois District Court, despite numerous orders of that court (entered either upon stipulation of the parties or upon motion of one or more defendants) granting extensions of time within which to answer or otherwise move with respect to the complaint. Nevertheless, discovery procedures were begun in Illinois in April, 1969, spanned more than a year [1] and were punctuated by various motions, filed by both plaintiff and defendants, seeking, *inter alia*, extensions of time to respond to interrogatories and motions to produce and inspect documents.

On April 29, 1969, the original four defendants moved to dismiss as to Amperex for improper venue or to transfer to the District of Rhode Island or to the Eastern District of New York either on the ground of improper venue or for the convenience of witnesses and in the interest of justice; to dismiss as to WLS "by way of summary judgment and because of improper venue"; to stay the action against Field and Newark. An identical motion was filed on behalf of ABC on June 16, 1969, approximately one month after it was added as a defendant (and WLS was dropped) by the amended complaint. All of these motions were denied in an order signed by Judge Perry on May 22, 1970. Subsequently, all four defendants (Amperex, Field, Newark and ABC) filed in the United States Court of Appeals for the Seventh Circuit a petition seeking a writ of mandamus directing the district judge to vacate his order of May 22, 1970. Their petition was granted on July 20, 1970. The court of appeals, holding that venue was improper as to Amperex in the Northern District of Illinois, ordered the action against Amperex transferred to this court, and severed and stayed the proceedings against the other defendants "pending disposition of Sheldon v. Amperex in the Eastern District of New York." On July 21, 1970, District Judge Perry signed an order transferring Sheldon v. Amperex from the Northern District of Illinois to the Eastern District of New York.

The posture in which the case came to this court was indeed unusual: throughout sixteen months of extensive pretrial discovery, issue was never formally joined. Despite the protracted nature of the proceedings which took place in Illinois, the actions of the parties in the one week immediately following the order transferring the case to this court present the factual context which bears significantly on the determination of defendant's

---

1. The docket sheet from the Northern District of Illinois indicates that depositions were filed as late as May 1, 1970.

motion. On Friday, July 24, 1970, three days after the order of transfer, plaintiff filed with the Clerk of the Northern District of Illinois a notice of dismissal as to the defendant Amperex, pursuant to Fed.R.Civ.P. 41(a) (1) (i). On the same date, plaintiff's New York counsel attempted to file an identical notice of dismissal with the Clerk of this court. The Clerk's office refused to permit the filing, on the ground that the case file had not yet arrived from the Illinois District Court. A similar attempt was made the following Monday; it, too, was unavailing for the same reason. The next day, July 28, 1970, the Clerk of the Eastern District of New York received the papers from the Illinois District Court and plaintiff was able to file its notice of dismissal here. On the previous day, however, Amperex, at long last, had served its answer and counterclaims on plaintiff by mailing them to plaintiff's counsel.[2]

### Defendant's contentions

1. Plaintiff may not dismiss voluntarily under Rule 41(a) (1) (i) because defendant served its answer and counterclaims before plaintiff filed its notice of dismissal.

2. Plaintiff may not dismiss voluntarily under Rule 41(a) (1) (i) because a motion for summary judgment was made before plaintiff filed its notice of dismissal.

3. Rule 41(a) (1) (i) is unavailable to plaintiff because only a complete action, not a claim against only one of several defendants, may be dismissed by filing a notice of dismissal.

4. The "equities" require that plaintiff's notice of dismissal be stricken.

5. The endorsement "So Ordered," placed on plaintiff's notice of dismissal by Judge Judd of this court, should be vacated as an improper exercise of discretion.

I. *Defendant's claim that its answer and counterclaims were served prior to the filing of plaintiff's notice of dismissal.*

■ The question of whether an answer was served by the defendant prior to plaintiff's filing of a notice of dismissal, so as to deprive plaintiff of the right to voluntarily dismiss the action, depends upon Rule 41(a) (1) (i) of the Federal Rules of Civil Procedure which, in pertinent part, provides as follows:

> " * * * an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs * * *."

In support of its motion to strike the notice of dismissal filed by plaintiff on July 28, 1970 in the Eastern District of New York, defendant contends, in total disregard of the notice of dismissal filed by plaintiff on July 24, 1970 in the Northern District of Illinois, that Rule 41(a) (1) (i) is inapplicable because defendant served its answer and counterclaims by mail one day prior to plaintiff's filing of a notice of dismissal in this District. Plaintiff argues first that, if the Northern District of Illinois was the proper forum in which to file (because the papers had not yet been re-

---

2. Under Fed.R.Civ.P. 5(b), this form of service was proper and was complete when mailed on July 27, 1970:

Rule 5. Service and Filing of Pleadings and Other Papers

\* \* \* \* \*

(b) Same: How Made. Whenever under these rules service is required or permitted to be made upon a party represented by an attorney the service shall be made upon the attorney unless service upon the party himself is ordered by the court. Service upon the attorney or upon a party shall be made by delivering a copy to him or by mailing it to him at his last known address or, if no address is known, by leaving it with the clerk of the court. \* \* \* Service by mail is complete upon mailing.

ceived by the Clerk of this court), then its filing in Illinois preceded service by defendant of its answer and counterclaims. If, on the other hand, the notice of dismissal should have been filed in the Eastern District of New York, then plaintiff asks that, in view of the Clerk's refusals to file the notice until the papers were physically received here, its notice filed on July 28, 1970 be deemed filed, *nunc pro tunc*, on July 24.

▆▆ ▆▆ Without passing upon either the propriety of the Clerk's actions or the effect to be given to plaintiff's diligence, this court is of the opinion that the notice of dismissal filed on July 24th in the Northern District of Illinois is to be given effect for purposes of the temporal requirement of Rule 41(a) (1) (i). Since a transfer of a case is not complete until the papers are physically lodged in the office of the Clerk of the transferee court, Magnetic Engineering & Mfg. Co. v. Dings Mfg. Co., 178 F.2d 866, 868 (2d Cir. 1950); Wilson v. Ohio River Co., 236 F.Supp. 96, 98 (S.D.W.Va.1964), aff'd, 375 F.2d 775 (4th Cir. 1967); See Drabik v. Murphy, 246 F.2d 408 (2d Cir. 1957); *cf*. Farrell v. Wyatt, 408 F.2d 662, 664 (2d Cir. 1969), the Northern District of Illinois did not lose jurisdiction of the case until the actual receipt of the papers occurred. Fisher v. United Airlines, Inc., 218 F.Supp. 223 (S.D.N.Y. 1963).[3]

Nor did the order of transfer signed on July 21, 1970 operate, ipso facto, to transfer the case to this court. Littman v. Bache & Co., 246 F.2d 490, 492 (2d Cir. 1957); Magnetic Engineering & Mfg. Co. v. Dings Mfg. Co., *supra*; 5 Moore's Federal Practice 1030–31; *cf*.

Sims v. Union News Co., 120 F.Supp. 116 (S.D.N.Y.1954). In Tele-Views News Co. v. S.R.B. TV Publishing Co., 28 F.R.D. 303 (E.D.Pa.1961), a case whose factual setting was similar to that of the instant case, the plaintiff filed in the Northern District of Illinois a notice of dismissal after that court had granted defendants' motion to transfer the case to the Eastern District of Pennsylvania. Neither of the defendants had filed an answer in the Northern District of Illinois. The transferee court was faced with the same question that is posed here, *viz*., whether plaintiff had a right to dismiss voluntarily in the transferor court under Rule 41(a) (1), after the motion to transfer was granted but before service of an answer. The court, relying on the clear language of Rule 41(a), upheld the plaintiff's right to dismiss voluntarily. 28 F.R.D. at 304.

In the instant case, the Illinois district court retained jurisdiction until July 28, 1970, the date on which the papers arrived in the Eastern District of New York, and plaintiff's notice of dismissal was properly filed in the Northern District of Illinois, albeit three days after the order of transfer. Moreover, this case illustrates the anomaly that would result if an order of transfer were to effect an automatic loss of jurisdiction in the transferor court, without simultaneously vesting jurisdiction in the transferee court. In such a case, a plaintiff would have no forum in which to file a notice of dismissal between the date of transfer and the date on which the papers were received by the transferee court. On the other hand, a defendant could foreclose the plaintiff from ever voluntarily dismissing the action under

---

3. The holding of the Court of Appeals for the Seventh Circuit that venue was improper as to Amperex in the Northern District of Illinois does not affect the jurisdiction of the Illinois district court. Proper venue is not a jurisdictional requirement. *See* Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939). On the contrary, a district court must have jurisdiction over the person of the defendant before it can transfer the case to another district. Total Sound, Inc. v. Universal Record Distributing Corp., 286 F.Supp. 123 (S.D.N.Y.1968); Fistel v. Beaver Trust Co., 94 F.Supp. 974 (S.D.N.Y. 1950).

Rule 41(a) (1) (i) by serving his answer during the same interval. In this regard, it is indeed strange that the defendant chose July 27, 1970, almost one and one-half years after the action was commenced, as the date on which to serve its answer, especially in light of the fact that plaintiff, on July 24, 1970, served defendant by mail with a copy of its notice of dismissal, thus conveying its intention to file said notice.[4]

Apart from the technical issue of whether chronologically, plaintiff filed its notice of dismissal prior to service by the defendant of a paper formally labeled an "answer," there remains the question of whether anything revealed by the record of this protracted case may be deemed *equivalent* to an answer for purposes of Rule 41(a) (1) (i), irrespective of the status of the formal pleadings. This question brings into sharp focus the underlying purpose of Rule 41(a) (1) (i), which is to permit a plaintiff to withdraw his suit at a time when there is no prejudice to another party. Miller v. Stewart, 43 F.R.D. 409 (E.D.Ill.1967); Klintworth v. Atlantic Coast Line Railroad Co., 39 F.R.D. 330 (D.S.C.1966). Thus, even though the rule was intended to provide a means for terminating an action automatically upon filing a notice of dismissal, Hyde Const. Co. v. Koehring Co., 388 F.2d 501 (10th Cir. 1968), cert. denied, 391 U.S. 905, 88 S.Ct. 1654, 20 L.Ed.2d 419 (1968), a plaintiff's right to dismiss voluntarily is, in theory, limited to an early stage of the proceedings. Toulmin v. Industrial Metal Protectives, 135 F.Supp. 925, 927 (D.Del. 1955); *See also*, Note of Advisory Committee on 1946 Amendment to Fed.R.Civ. P. 41.

Although the language of Rule 41(a) (1) (i) is clear on its face, several courts have dealt with the question of whether the advanced nature of the proceedings should operate, ipso facto, to bar a plaintiff's right to dismiss voluntarily. Most frequently, such cases have conditioned the right to dismiss under Rule 41(a) (1) (i) on whether or not issue has been joined on the merits of the controversy prior to the filing of a notice of dismissal. In this regard, some courts have upheld a notice of dismissal filed pursuant to Rule 41(a) (1) (i) after a motion to dismiss for lack of jurisdiction, Kilpatrick v. Texas & P. Ry. Co., 166 F.2d 788 (2d Cir. 1948), cert. denied, 335 U.S. 814, 69 S.Ct. 32, 93 L.Ed. 369 (1948); Robertshaw-Fulton Controls Co. v. Noma Electric Corp., 10 F.R.D. 32 (D.Md. 1950); after a motion to dismiss for failure to state a claim upon which relief could be granted, Pennsylvania R. Co. v. Daoust Const. Co., 193 F.2d 659 (7th Cir. 1952); after a motion for a change of venue, Toulmin v. Industrial Metal Protectives, *supra*; after argument on defendant's motion to dismiss and an announcement by the court of how it intended to dispose of the case, subject to proposed findings of fact and conclusions of law, Miller v. Reddin, 422 F.2d 1264 (9th Cir. 1970); after argument on defendant's motion to transfer, White v. Thompson, 80 F.Supp. 411 (N.D.Ill. 1948); after a motion for a stay pending arbitration, Rife v. McElwee-Courbis Const. Co., 16 F.R.D. 11 (M.D.Pa.1954); Wilson & Co. v. Fremont Cake & Meal

4. The service of an answer by a defendant who anticipates a plaintiff's notice of dismissal and serves his answer merely to frustrate such notice, has been held ineffective for purposes of Rule 41(a) (1). In Kohloff v. Ford Motor Co., 29 F.Supp. 843 (S.D.N.Y.1939), decided when the criterion in Rule 41(a) (1) (i) was *service* of a notice of dismissal rather than *filing* (the present requirement), plaintiff's attorney notified defendant's attorney of plaintiff's intention to serve a notice of dismissal prior to the date of such service. The defendant immediately served its answer, before plaintiff served its notice. On the theory that, for all practical purposes, plaintiff had notified the defendant of its intention to withdraw voluntarily before the defendant served its answer, the court held that the plaintiff was entitled to dismiss under Rule 41(a) (1)(i). 29 F.Supp. at 844; *Cf.* 5 Moore's Federal Practice 1012, n. 5.

Co., 83 F.Supp. 900 (D.Neb.1949); after a chambers conference (on notice but unattended by defendant) on the issue of irreparable harm, held with regard to plaintiff's application for an order to show cause, Gianis & Co. v. Ostrau, 43 F.R.D. 405 (S.D.N.Y.1967). The basis for the holding in each of these cases was the finding that nothing which had occurred in the proceedings could be deemed an answer for purposes of Rule 41(a) (1) (i).

 In the case at hand, defendant contends that, unlike the above-cited cases, an "advanced stage" has been reached and that to permit plaintiff to dismiss voluntarily would violate the spirit of Rule 41(a) (1) (i), despite the fact that, affording the rule a literal application, plaintiff filed its notice prior to service of an answer by the defendant. In essence, defendant's position is that the voluminous depositions taken in this case (some 400 pages) and the several days of examination by plaintiff of defendant's documents should be treated as the equivalent of an answer for purposes of Rule 41(a) (1) (i). Plaintiff argues, on the other hand, that the explicit terms of the Rule have been satisfied and, for that reason alone, its notice of dismissal should be given full force and effect.

In support of its claim, defendant relies primarily on Harvey Aluminum, Inc. v. American Cyanamid Co., 203 F.2d 105 (2d Cir. 1953), cert. denied, 345 U.S. 964, 73 S.Ct. 949, 97 L.Ed. 1383 (1953). In Harvey Aluminum, the plaintiff obtained a temporary restraining order, pending a hearing on its motion for an injunction *pendente lite*, against the transfer of the assets of defendant's subsidiary to anyone other than the plaintiff. After the

hearing at which the court reviewed the merits of the case, the court denied plaintiff's motion, finding that plaintiff had virtually no chance of success at the ultimate trial on the merits. Thereafter, but before defendant served its answer, plaintiff filed a notice of dismissal under Rule 41(a) (1) (i). The defendants' subsequent motion to vacate this notice was denied. The court of appeals reversed, holding that the merits of the case were "squarely raised" at the hearing on plaintiff's motion for a preliminary injunction and that, although no formal answer had been served, a literal application of Rule 41(a) (1) (i) to a case of this kind (*i. e.*, where, for all practical purposes, issue had been joined), would be inconsistent with its purpose of "preventing arbitrary dismissals after an advanced stage of a suit has been reached." 203 F.2d at 108.[5]

This court is of the opinion that *Harvey Aluminum* is inapposite to the instant case and that defendant's reliance on it is misplaced. The considerable time and effort expended by both parties in discovery procedures did not extend this suit into an "advanced stage," nor did they put the case into a posture in which dismissal would be "arbitrary." Nor can it be said that the proceedings in the Illinois district court with respect to defendants' motions to dismiss, transfer and/or stay "squarely raised the merits of the controversy," as was true in *Harvey Aluminum*. On the contrary, in *Harvey Aluminum*, the very basis for denying the plaintiff's motion for a preliminary injunction was the court's opinion, after a thorough review of the merits, that success at trial was highly improbable, whereas in this case, the de-

---

5. Other cases in which a court has held that a plaintiff should not be permitted to dismiss because the case had reached an "advanced stage" or a decision on the merits had been reached were those in which all pre-trial work was completed and a note of issue filed, Mistretta v. S.S. Ocean Evelyn, 250 F.Supp. 868

(E.D.N.Y.1966); Schopen v. Westwood Pharmacal Corp., 11 F.R.D. 555 (W.D. N.Y.1951); or the court had become familiar with the merits of the action, Erie-Lackawanna R. R. Co. v. United States, 279 F.Supp. 303 (S.D.N.Y.1967); *Cf.* Nixon Construction Co. v. Frick Co., 45 F.R.D. 387 (S.D.N.Y.1968).

fendants' various motions were denied summarily by the district court.

It is also significant that the treatment given to *Harvey Aluminum* by subsequent cases dealing with Rule 41(a) (1) (i) has, in effect, limited that case to its particular factual setting. In Littman v. Bache & Co., 252 F.2d 479 (2d Cir. 1958), plaintiff filed its complaint in the Southern District of New York, but defendant never served an answer. After defendant's motion to transfer to the District of Florida was granted, plaintiff filed a notice of dismissal. Subsequently, defendant's motion to vacate the notice of dismissal was granted. On appeal, the United States Court of Appeals for the Second Circuit reversed.[6] Distinguishing *Harvey Aluminum*, the court held that issue had not been joined prior to the filing of the notice of dismissal and, therefore, the notice should not have been vacated:

> The merits of the controversy were never before the court. To be sure, both parties were familiar with the subject matter of the litigation, but this was clearly insufficient to deprive plaintiff of his right to a voluntary dismissal. 252 F.2d at 481.

*Littman, supra*, is directly applicable to the case at bar. *See* Miller v. Stewart, *supra*, 43 F.R.D. at 411.

Other cases decided subsequent to *Littman*, whose facts are similar to those in the instant case, have distinguished *Harvey Aluminum*, choosing instead to follow the reasoning of *Littman*. In United States v. Greater Blouse, Skirt & Neckwear Contractors Association, 35 F.R.D. 130 (S.D.N.Y.1964), the Government sought injunctive relief against several defendants in a suit under the Sherman Act. Although the parties negotiated over a period of nearly two years with a view towards a proposed decree, none of the defendants ever filed an answer. After the Government filed

a notice of dismissal under Rule 41(a) (1) (i), one of the defendants moved to vacate, arguing that the rule should be given a liberal interpretation because the case had reached an "advanced stage." The court denied the motion, upholding the plaintiff's right to dismiss voluntarily. The court found that the negotiations, *"protracted by the parties themselves,"* were neither the equivalent of an answer, nor did they bring the case within the holding of *Harvey Aluminum*. 35 F.R.D. at 131 (emphasis supplied). Issue was never joined nor was the court ever asked to pass upon the merits of the Government's claims—in short, the case was in the same position as when the complaint was filed, *i.e.*, an "early stage of the proceedings." *Id.* at 131. In the case at bar, it can also be said that both parties are responsible for the inordinate delays in this lawsuit, and, as in *Greater Blouse*, that despite its duration, the case, as of the time plaintiff filed its notice of dismissal, was not in its advanced stages. Furthermore, in light of the dilatory tactics employed by the defendant before serving its answer, it is difficult to see how permitting plaintiff to exercise his right to dismiss voluntarily now constitutes the type of prejudice sought to be avoided by Rule 41(a) (1) (i).

In Tele-Views News Co. v. S.R.B. TV Publishing Co., *supra*, a case involving facts virtually identical to those in the instant case, *Harvey Aluminum* was again distinguished, for reasons similar to those stated in *Greater Blouse*. In *Tele-Views News*, plaintiff filed its complaint in the Northern District of Illinois. Neither of the two defendants filed an answer in Illinois but discovery was begun. Upon motion of one defendant, the case was ordered transferred to the Eastern District of Pennsylvania, but before the papers were received by the transferee court, plaintiff filed a no-

6. The opinion of the court of appeals denying defendant's motion to dismiss plaintiff's appeal from the district court's order vacating plaintiff's notice of dismissal is reported at 246 F.2d 490 (2d Cir. 1957).

tice of dismissal in the Northern District of Illinois. The Pennsylvania district court denied a motion of the defendant to vacate the notice of dismissal, despite defendant's arguments that it had expended time and effort in arguing various motions in the Northern District of Illinois and that permitting dismissal would frustrate the order of transfer. (Identical arguments have been set forth by the defendant in this case.) The court distinguished *Harvey Aluminum,* relying instead on *Littman* as authority for the proposition that, before an answer has been served and when the merits of a case have never been argued or proved to any court, Rule 41(a) (1) (i) must be given a literal interpretation. 28 F.R.D. at 305–306.[7]

For all of the foregoing reasons, this court is of the opinion that Littman v. Bache & Co., and the cases following its holding must be given controlling weight. As a result of the *Littman* line of cases, *Harvey Aluminum* should be limited to its narrow factual context. The court holds, therefore, that neither a formally-labeled answer was served by the defendant, nor did its equivalent occur, prior to plaintiff's filing of its notice of dismissal.

II. *Defendant's claim that there was a motion for summary judgment prior to the filing of plaintiff's notice of dismissal.*

■ Rule 41(a) (1) (i) also provides that a plaintiff may dismiss an action by filing a notice of dismissal at any time before service by the adverse party of a motion for summary judgment. Defendant claims that the motion to dismiss, transfer and/or stay filed by the four original defendants on April 29, 1969 in the Northern District of Illinois sought dismissal as to WLS "by way of summary judgment"; that dismissal as to defendant Newark was sought "with prejudice" and, therefore, was equivalent to a motion for summary judgment; that the dismissal sought as to Amperex for improper venue, because it was supported by affidavits, was tantamount to a motion for summary judgment. As to the motions filed on behalf of both WLS and Newark, defendant's argument is untenable. Service of a notice of motion for summary judgment by one or more of several defendants (or of an answer, for that matter), does not foreclose the plaintiff from dismissing as to any other defendant who has not served notice of such a motion. Terry v. Pearlman, 42 F.R.D. 335 (D.Mass.1967); 5 Moore's Federal Practice 1088. In the instant case, this principle is strengthened by the fact that in the amended complaint, filed by plaintiff on May 6, 1969, WLS was dropped as a party-defendant. It would be inequitable indeed to permit the motion of WLS, which was out of the case two months after the original complaint was filed, to control plaintiff's right to dismiss as to Amperex, a party which procrastinated for sixteen months before serving its answer.

■ As to the motion to dismiss as to Amperex for improper venue, defendant's claim is again without merit. Fed. R.Civ.P. 12(b) sets forth the conditions under which a motion to dismiss is to be treated as one for summary judgment. Under that rule, a motion to dismiss for failure of the complaint to state a claim upon which relief can be granted shall be treated as a motion for summary judgment, and then only if "matters outside the pleading are presented to and not excluded by the court." While it is true, in the instant case, that defendant's motion to dismiss as to Amperex was supported by affidavits (i. e., matters

---

7. The court in *Tele-Views News* subsequently reaffirmed its position when the case was reargued on the sole question of whether a *motion to dismiss made by* the defendant prior to the filing of plaintiff's notice of dismissal was to be treated as a motion for summary judgment for purposes of Rule 41(a) (1) (i). 28 F.R.D. at 306–308.

outside the pleading), said motion was based on an allegation of improper venue, not on an alleged failure of the complaint to state a claim upon which relief might be granted. It is irrelevant, therefore, that this motion was accompanied by affidavits, since Rule 12(b) does not provide for summary judgment treatment of a motion to dismiss which asserts only the defense of improper venue.

The 1946 amendment to Rule 41(a) (1) (i), giving a motion for summary judgment by the adverse party the same effect of preventing voluntary dismissal as was previously reserved only for service of an answer, reflects the view that a motion for summary judgment, like an answer, may raise the merits of the case and, as in *Harvey Aluminum*, should bar the plaintiff from thereafter dismissing voluntarily. *See* Note of Advisory Committee on Amendment to Rule 41, 28 U.S.C.; Robertson v. Limestone Mfg. Co., 20 F.R.D. 365, 373 (W.D.S.C.1957). In this case, on the other hand, it is clear that defendant's motion to dismiss for improper venue did not prevent the merits of the controversy to the court. Thus, even if raising the merits was the criterion under Rule 41(a) (1) (i) for barring a voluntary dismissal by plaintiff, defendant's motion would not satisfy this standard.

III. *Defendant's claim that because plaintiff is seeking to dismiss only a claim against one defendant, Rule 41(a) (1) (i) is inapplicable.*

■ Defendant argues that Rule 41(a) (1) (i) is unavailable to the plaintiff for the further reason that only a complete action, not a single claim or cause of action, may be dismissed by filing a notice of dismissal. The rule provides that "an action" may be dismissed by filing a notice of dismissal before service by the adverse party of an answer or a motion for summary judgment. This court would agree that a notice of dismissal is not the proper vehicle to use when a plaintiff is seeking

merely to drop one of several defendants as a party to a lawsuit. That, however, is not the situation in the present case. As of the date of the order transferring Sheldon v. Amperex Electronic Corp. to the Eastern District of New York and severing and staying the action as to the other defendants, the *entire controversy* was between Sheldon and Amperex. This was also true at the time plaintiff filed its notice of dismissal. Therefore, plaintiff's notice *did* dismiss "an action" within the meaning of Rule 41(a) (1) (i), and not merely a single claim against one of several defendants to "an action." It has also been held that, for purposes of Rule 41(a) (1) (i), the word "action" means something other than "entire controversy." In Terry v. Pearlman, 42 F.R.D. 335 (D.Mass.1967), the court said:

"I interpret the word 'action' as used in Rule 41(a) (1) to mean all of the claims against any one defendant, and not necessarily all of the claims against all of the defendants. I conclude, therefore, that a dismissal by notice under Rule 41(a) (1) (i) can be effective against less than all defendants." (Footnote omitted.) 42 F.R.D. at 337.

IV. *Defendant's claim that the "equities" require that plaintiff's notice of dismissal be stricken.*

■ In support of its contention that the equities in this case weigh in favor of granting its motion to vacate the notice of dismissal filed by plaintiff, defendant argues (1) that giving effect to the notice of dismissal would frustrate the order of the Court of Appeals for the Seventh Circuit directing that the case be transferred to the Eastern District of New York; and (2) that plaintiff has been guilty of forum shopping, harassment, and "procedural gimmickry" in its conduct throughout this litigation. As to defendant's first claim, plaintiff argues that the writ of mandamus issued by the court of appeals determined

nothing more than that venue was improper as to Amperex in the Northern District of Illinois. This court is in agreement with that interpretation. The order of the court of appeals contemplated only that the case would be transferred to the Eastern District of New York, to proceed as if it had been filed here originally. Although that order spoke of the "disposition of Sheldon v. Amperex in the Eastern District of New York," its language should not be construed as a mandate that the case be tried here on the merits or as intended to completely foreclose the plaintiff's right to dismiss voluntarily.

At this juncture, it should also be noted that defendant's aversion to proceeding in the Northern District of Illinois is betrayed by the existence of a contract of indemnification between Amperex and Field, one of the other defendants named in the complaint. In that agreement, Amperex has agreed to defend Field in the action that was severed and stayed in the Northern District of Illinois. Therefore, irrespective of both the decision of the Seventh Circuit as to venue and of the "disposition of Sheldon v. Amperex in the Eastern District of New York," Amperex has willingly become involved in the litigation between Sheldon and the other defendants in the District of Illinois. More importantly, if Amperex plays an active role in the defense of Field, a user of the device which Amperex allegedly manufactures, then Amperex may be bound by the outcome of that case under the doctrine of *res judicata*.[8] In short, the gist of the order directing the transfer of this case was that Amperex could not be subjected to venue in Illinois involuntarily. Therefore, it is disingenuous, at best, for Amperex, which has *voluntarily* committed itself to indemnify a party defendant to the suit pending in the Northern District of Illinois, to argue that the import of that order was that the case must go forward on the merits in this district.

With respect to defendant's second claim, plaintiff counters by citing numerous examples of defendant's responsibility for protracting this litigation. These include, for example, the

---

8. The mere payment by Amperex of Field's counsel fees or participation in the trial would be insufficient to bind Amperex by a decision in that case. However, active participation in the defense of Field would alter the situation considerably. In this regard, the United States Court of Appeals for the Fifth Circuit stated, in Bros, Incorporated v. W. E. Grace Manufacturing Co., 261 F.2d 428 (5th Cir. 1958):

> This is particularly so in patent infringement cases in which, from tactical or strategic considerations relating to venue, desirability of a particular forum and the like, such cases are so often filed and tried against a dealer, a seller, a distributor, or a user of the accused device manufactured by another. If the manufacturer stands aloof, he risks a judgment adverse to his interest resulting perhaps from inadequate or incompetent defense by one who has a secondary interest. Such judgment, to be sure, would normally not be binding by estoppel or *res judicata*, but it would take its place in the jurisprudence where its practical effect as stare decisis might be as decisive. The alternative, of course, is to jump in and give the case full and active defense as though the manufacturer were the real named party. This assures that the issues will be presented and contested in a way deemed most effective by the nominally remote, but practically immediate, party at interest.
>
> Where that course is followed and the non-party actively and avowedly conducts the defense, manages and directs the progress of the trial at its expense and under its supervision, the outcome, which if favorable would have redounded to his benefit, if adverse becomes sauce for goose and gander alike, and binding under principles of *res judicata*. (Citations omitted.) 261 F.2d at 430–431.

*Accord,* Tidewater Patent Development Co. v. Kitchen, 421 F.2d 680, 681 (4th Cir. 1970); Guillot v. Cenac Towing Co., 366 F.2d 898, 906 (5th Cir. 1966); Simon v. Maryland Casualty Co., 353 F.2d 608, 612 (5th Cir. 1965).

refusal to produce certain documents subsequently ordered to be produced by the court; filing motions for clarification and modification of the court's production order; filing a motion for a first and separate trial on the issue of liability.

More significant than these dilatory maneuvers of defendant in the Northern District of Illinois is the fact that, on July 27, 1970 (curiously, the first business day after plaintiff served its notice of dismissal on the defendant by mail), Amperex instituted an action for a declaratory judgment against Sheldon in the Southern District of New York.[9] The complaint filed in that court relates to the same patent and the same allegedly infringing tubes. In substance, it is the same controversy as is involved in the instant case, but with the parties reversed. Amperex states in its brief in support of the present motion that it is willing to discontinue the declaratory judgment action "upon an appropriate order maintaining the present suit." It thus appears that Amperex has instituted its action in the Southern District of New York, not in good faith, but rather as a bargaining device, in an effort to insure that, one way or another, the merits of its controversy with Sheldon will be tried to a federal court in New York. In light of the overt forum shopping it has engaged in, the defendant's argument that plaintiff alone has been guilty of "harassment" and "procedural gimmickry" is patently frivolous.

Although the procedural tactics employed by both plaintiff and defendant are by no means determinative of the legal questions posed by this case, this court is impelled to express its strong disapproval of the trifling devices resorted to by both parties in their efforts to jockey for position, the consequence of which has been repeated delay and the passage of an excessive period of time before issue was finally joined. In light of all of the maneuvering which has transpired since the complaint was filed in March, 1969, it seems unlikely that the defendant would have served its answer when it did but for its knowledge of plaintiff's intention to file a notice of dismissal. On the other hand, plaintiff's conduct does not indicate a genuine desire to lock horns with Amperex (obviously, the real party in interest) as much as it does a persistent effort to keep this case in the Northern District of Illinois. In short, as regards the so-called "equities" in this case, this court is unable to find that they weigh in favor of either of the parties. Nevertheless, there is nothing in the record of this case which should operate to bar plaintiff's right to voluntary dismissal under Rule 41(a) (1) (i).

### V. Defendant's claim that the "So Ordered" endorsement be vacated.

In light of the foregoing discussion of the legal issues involved in this case, it is unnecessary to pass upon defendant's request that a "So Ordered" endorsement, placed upon plaintiff's notice of dismissal by another judge of this court, be stricken. Whether or not that endorsement comes within the doctrine of "law of the case" is irrelevant here, since this is clearly not a case in which court approval was required in order to give effect to plaintiff's notice of dismissal.

Having rejected all of the defendant's contentions, its motion is denied in all respects.

This is an order.

---

9. Civil Action No. 70, Civ. 3211.