NATIONAL CEMENT COMPANY, INC., Plaintiff,

v.

The MEAD CORPORATION, Defendant.

No. 78 Civ 0062 (LBS).

United States District Court,
S. D. New York.

Dec. 12, 1978.

Hughes, Hubbard & Reed, New York City, for plaintiff; James B. Kobak, Jr., New York City, of counsel.

Townley & Updike, New York City, for defendant; Ronald S. Daniels, New York City, of counsel.

OPINION

SAND, District Judge.

Plaintiff National Cement Company, Inc. ("National") brought this action to recover damages, and for equitable relief, in connection with a contract between its French parent corporation and defendant, The Mead Corporation ("Mead"). On July 25, 1978, plaintiff filed a Notice of Voluntary Dismissal pursuant to F.R.Civ.P. 41(a)(1)(i). Defendant has moved to vacate the dismissal. We conclude that plaintiff was not entitled to such a voluntary dismissal and grant defendant's motion.

Rule 41(a)(1) provides as follows:

"[A]n action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs . . . ."[1]

---

1. Rule 41(a)(1) continues: ". . . or (ii) by filing a stipulation of dismissal signed by all parties who appeared in the action. Unless otherwise stated in the notice of dismissal or

The purpose of the rule, allowing plaintiff voluntarily to dismiss his action, has been described as "to allow the plaintiff to dismiss as of right before issue has been joined", 5 *Moore's Federal Practice,* ¶ 41.02[3], and "to limit the right of dismissal by the plaintiff's unilateral act to an early stage of the proceedings". 9 Wright & Miller, *Federal Practice and Procedure* § 2363. Whether or not an action is at "an early stage" or "issue has been joined", however, is determined by an objective test: whether the defendant has, at the time of the notice of dismissal, served either an answer or a motion for summary judgment. "The drafters of Rule 41(a)(1)(i) . . . did not attempt to effectuate their purpose by phrasing the rule in vague terms or, as in Rules 41(a)(1)(ii) or 41(a)(2), by calling for judicial involvement or the exercise of judicial discretion. Undoubtedly conscious of the incalculable paths which litigation may follow, the drafters employed precise language to define an 'early stage' of a proceeding". *D. C. Electronics, Inc. v. Nartron Corp.,* 511 F.2d 294, 297 (6th Cir. 1975). See *Merit Insurance Co. v. Leatherby Insurance Co.,* 581 F.2d 137 (7th Cir. 1978).

The question before us, therefore, is whether or not defendant had served either an answer or a motion for summary judgment prior to National's notice of dismissal.

Mead did not file an answer. On March 22, 1978, however, it did file a motion "for an order pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, dismissing the Complaint herein for lack of subject-matter jurisdiction, failure to state a claim upon which relief can be granted and failure to join an indispensible party as required by Rule 19 . . .".

■ A motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), may in certain circumstances be converted into a motion for summary judgment: when "matters outside the pleading are presented to and not excluded by the court." Such a motion may also be treated as one for summary judgment for purposes of precluding plaintiff from voluntarily dismissing his action pursuant to Rule 41(a)(1)(i).[2] Mead contends that its motion to dismiss must be treated as a summary judgment motion, since it was based on plaintiff's failure to state a claim upon which relief can be granted, and was accompanied by material outside the pleading. National, on the other hand, argues that defendant's 12(b) motion in fact raised only two challenges to the complaint: first, that the court lacked subject matter jurisdiction in that the claim was premature and therefore did not present a justiciable question; and second, that plaintiff had failed to join an indispensible party, National's French parent corporation. National takes the position that the third ground of the motion, the failure to state a claim, was never discussed separately from the justiciability issue, and was not in fact a basis for the dismissal Mead sought. Since a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(7) cannot be treated as one for summary judgment,[3] National contends that no such motion was ever served and that it therefore was entitled to a voluntary dismissal under Rule 41(a)(1)(i).

In order to characterize defendant's motion to dismiss, we must of course look to the substance of the motion. *Scam Instrument Corp. v. Control Data Corp.,* 458 F.2d 885, 889 (7th Cir. 1972). "The element that triggers the conversion [to a motion for

---

stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim."

**2.** See 5 *Moore's Federal Practice,* ¶ 41.02[3], at 41–32; *Nix v. Fulton Lodge No. 2 of the International Ass'n of Machinists and Aerospace Workers,* 452 F.2d 794 (5th Cir. 1971) (rejecting

defendant's argument that its 12(b)(6) motion should have been treated as one for summary judgment, based on inclusion of photocopies of court decisions as "outside material").

**3.** See *Sheldon v. Amperex Electronic Corp.,* 52 F.R.D. 1, (E.D.N.Y.) aff'd, 449 F.2d 146 (2d Cir. 1971); *Progressive Steelworkers Union v. International Harvester Corp.,* 70 F.R.D. 691 (N.D.Ill.1976); 5 Wright & Miller *Federal Practice and Procedure,* § 1366.

summary judgment] is a challenge to the sufficiency of the pleader's claim supported by extra-pleading material. It is not relevant how the defense actually is denominated." 9 Wright & Miller, *Federal Practice and Procedure,* § 1366, at 676.

■ As an initial step, we must review the nature of the complaint filed against Mead. Prior to April, 1974, National had been a division of Mead. On April 9, 1974, it was sold to Societe des Cements Vicat ("Vicat"), a French corporation. In 1976, National was named as a defendant in a number of antitrust actions brought in the District of Arizona, which actions are still pending. In this action, National seeks, *inter alia,* a declaration that it is entitled to indemnification pursuant to the Mead-Vicat Purchase Agreement for any liability National may ultimately be found to have to the Arizona plaintiffs for conduct pre-dating the 1974 sale to Vicat; a declaration that it is entitled to reimbursement of expenses incurred and to be incurred in the future in defending the Arizona actions, and specific performance of the indemnification provisions of the Purchase Agreement.[4]

In its Memorandum in Support of its Motion to Dismiss, Mead summarized its position as follows:

"This action . . . is at best entirely premature, and plaintiff's request for a declaratory judgment is no more than an attempt to obtain a purely speculative advisory opinion from the court. Since the complaint fails to set forth a ripe case or controversy, the court lacks subject matter jurisdiction; and the complaint fails to state a claim upon which relief can be granted."

"Moreover, Vicat, an indispensable party, is not before the court. (*Id.* at 4).

Until such time as the factual evidence of the Arizona Actions is developed and those Actions are settled or finally adjudicated (in favor of plaintiffs or defendants), any attempt to interpret the indemnity clause of the Purchase Agreement to ascertain who should bear any costs or expenses is speculative, premature and unnecessary both as a practical matter and as a matter of law." (*Id.* at 10).

Mead thus appears to have contended that any construction by the Court of plaintiff's contractual rights to either indemnification of its antitrust liability or reimbursement for its litigation expenses would be premature. On closer examination, however, we conclude that Mead sought a dismissal on prematurity grounds only as to the claim for liability indemnification. Its argument as to the claim for reimbursement of litigation expenses, on the other hand, contested the merits of plaintiff's claim. Thus, Mead contended that those legal fees already incurred

". . . without notice to, consultation with or authorization by Mead, were expended in an unsuccessful attempt to establish that National Cement's post-1974 activity did not make it part of the conspiracy. Mead, of course, is not responsible for those fees. (*Id.* at 10).

Moreover, the complaint is silent as to why National Cement is entitled to reimbursement when, under the terms of the Purchase Agreement, only Vicat is entitled to reimbursement." (*Id.* at 13).

In its Reply Memorandum in Support of Its Motion to Dismiss, Mead asserted:

"[n]owhere in the Purchase Agreement has Mead agreed to indemnify National Cement against the costs of defending baseless claims. Those expenses are costs of an on-going business—whether those claims alleged acts before the business was purchased or acts after the business was purchased or both." (At 12–13).

In response, National contended that it was entitled to indemnification of current litigation expenses:

4. National also seeks reformation of the Purchase Agreement and monetary damages on a claim of fraud.

"Mead's liability to NC does not depend on whether either Mead or NC ultimately would or could be found liable for anything. The crucial thing is whether claims involving pre-April, 1974 conduct have been asserted against NC. The claims asserted in the Arizona antitrust actions are undeniably within that category.

No matter what happens in the future, NC is clearly entitled now to some indemnification under ¶ 8(b) of the Purchase Agreement. NC will continue to be entitled to indemnification at least as long as the Arizona antitrust actions continue to involve pre-April, 1974 conduct." (Plaintiff's Memorandum in Opposition to Motion to Dismiss Complaint, at 8).[5]

With respect to the claim for reimbursement of current litigation expenses, therefore, both parties addressed themselves to the merits of the issue: whether or not plaintiff was entitled to such reimbursement, regardless of the outcome of the Arizona litigation, under the terms of the Purchase Agreement. Mead took the position that plaintiff was entitled to reimbursement for litigation expenses only if it were found liable in the antitrust actions, and then only to the extent that its liability was based on pre-1974 activity which would be attributable to Mead. Plaintiff contended, on the other hand, that its contractual rights to reimbursement existed as long as a claim involving pre-1974 conduct was pending.

This Court did not resolve any of the issues raised in Mead's motion to dismiss, since plaintiff filed its notice of voluntary dismissal prior to the scheduled oral argument. Had we done so, however, defendant's position with respect to litigation expenses would indeed have required a determination on the merits of plaintiff's claim, requiring us to construe the provisions of the Purchase Agreement. That agreement was attached as an exhibit to Mead's motion papers.

5. See also Affidavit of James B. Kobak, Jr., in Opposition to Motion to Dismiss Complaint,

Consequently, we conclude that Mead's motion to dismiss was based not only on grounds of prematurity (as to the claim for indemnification of a possible ultimate judgment), but also (as to the claim for reimbursement of expenses) on grounds that plaintiff had failed to state a claim upon which relief could be granted. With the inclusion of the Purchase Agreement as material outside the pleadings, that part of defendant's motion was converted to a motion for summary judgment. In light of that posture of the case at the time plaintiff noticed its voluntary dismissal, we grant Mead's motion to vacate the dismissal.

Defendant's original motion will be treated as one for summary judgment, as to Count II of the Complaint, and as one to dismiss under Rules 12(b)(1) and 12(b)(7), as to the remainder of the Complaint. Oral argument will be held on December 28, 1978.

SO ORDERED.

¶¶ 13 and 23, in which plaintiff's counsel asserted the same position.