DATABASE AMERICA, INC. and
Ed Burnette Consultants,
Inc., Plaintiffs,

v.

BELLSOUTH ADVERTISING
& PUBLISHING CORP.,
Defendant.

Civ. A. No. 92–3610 (AJL).

United States District Court,
D. New Jersey.

June 15, 1993.

Joseph B. Fiorenzo, Sokol, Behot & Fiorenzo, Hackensack, NJ, and Stanley L. Amberg, Robert E. Rudnick, Davis Hoxie Faithfull & Hapgood, New York City, for plaintiffs.

Roslyn S. Harrison, McCarter & English, Newark, NJ, and Anthony B. Askew, Jones & Askew, Atlanta, GA, for defendant.

OPINION

LECHNER, District Judge.

Currently before the court is the motion of plaintiffs Database America, Inc. ("Database") and Ed Burnette Consultants, Inc. ("Burnette") (collectively, the "Plaintiffs") for reconsideration, pursuant to Rule 12I of the General Rules of the District Court For the District of New Jersey ("Local Rule 12I"), of the Letter–Opinion and Order, filed 28 April 1993 (the "28 April 1993 Decision"), 825

F.Supp. 1195, transferring this case to the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1406(a).[1]

For the reasons that follow, the motion for reconsideration is denied.

*Facts*

A. *Background*

The facts of this case are set forth at length in the 28 April 1993 Decision. *See* 28 April 1993 Decision at 1199–1206. What follows below are those facts relevant to the motion for reconsideration.

Database and Burnette are related New Jersey corporations [2] with their principal and only places of business located in Montvale, New Jersey. Complaint (the "Complaint"), filed 26 August 1992; 28 April 1993 Decision at 1199. Since 1974, Burnette has been engaged in the business of preparing and selling lists of various data. Complaint, ¶ 5; 28 April 1993 Decision at 1199. These lists, which are prepared in Montvale with the aid of a computer database, contain factual information on businesses in the United States, such as names, addresses, telephone numbers and advertising data. 28 April 1993 Decision at 1199. Plaintiffs concede that some of this factual information has been taken from yellow pages in directories published by BAPCO and by other unrelated companies. *Id.;* Complaint, ¶ 5. Neither Database nor Burnette actually publish or has published its own yellow page directories. 28 April 1993 Decision at 1199.

BAPCO is a Georgia corporation with its principal place of business in Atlanta, Georgia.[3] *Id.;* Complaint, ¶ 2. BAPCO has no office, telephone or bank account in New Jersey. 28 April 1993 Decision at 1199. It does not maintain any sales, manufacturing or other type of office or employees in New Jersey. *Id.* BAPCO further alleges:

> BAPCO does not hold itself out to the public as doing business in New Jersey and has not qualified with the Secretary of State's office in New Jersey to do business within the state. BAPCO does not have a designated agent for the receipt of service of process in New Jersey and does not pay taxes in the state. BAPCO does not send any goods into New Jersey, nor does BAPCO perform any services within the state, including the sale of advertising for any of its [y]ellow [p]ages directories. Finally, BAPCO does not solicit sales of advertisements for its [y]ellow [p]ages directories outside the southeastern United States.

*Id.* at 1199.

Since 1984, BAPCO has been in the business of "creating, compiling, publishing and distributing classified telephone directories (Yellow Pages) in nine southeastern states." [4] *Id.* at 1199–1200. Those states are Georgia, Florida, Tennessee, North Carolina, South Carolina, Alabama, Louisiana, Mississippi and Kentucky. *Id.* BAPCO does not create, publish or distribute any yellow pages directories for use by telephone subscribers in New Jersey.[5] *Id.* at 1200.

---

1. In support of the motion for reconsideration, Plaintiffs have submitted the following: Plaintiffs' Brief in Support of Motion For Reargument Pursuant to General Rule 12I of the United States District Court For the District of New Jersey (the "Moving Brief"); Letter–Reply Brief, dated 24 May 1993 (the "Reply Brief").

   In opposition to the motion, defendant Bellsouth Advertising & Publishing Corporation ("BAPCO") has submitted the following: Defendant's Answering Brief on Plaintiff's Motion For Reargument (the "Opp. Brief").

   Pursuant to Local Rule 12I, oral argument was not heard on the motion for reconsideration. *See* Letter from court, dated 20 May 1993.

2. Burnette is a subsidiary of Database. 28 April 1993 Decision at 1199 n. 3.

3. BAPCO is a wholly-owned subsidiary of Bellsouth Enterprises, Inc., which itself is a wholly-owned subsidiary of Bellsouth Corporation. 28 April 1993 Decision at 1199 n. 4.

4. Prior to 1984, American Telephone & Telegraph Co. ("AT & T") published yellow pages for the geographic areas now covered by BAPCO. Complaint, ¶ 4. Now, BAPCO publishes its yellow pages pursuant to exclusive licensing agreements with Southern Bell Telephone and Telegraph Co. ("Southern Bell") and South Central Bell Telephone Co. ("South Central Bell"). 28 April 1993 Decision at 1200 n. 5.

5. New Jersey is outside the subscriber area for telephone services provided by Southern Bell and South Central Bell. 28 April 1993 Decision at 1200 n. 6.

Annually, BAPCO publishes more than five hundred different telephone directories, including yellow pages.[6] *Id.* at 1200. BAPCO asserts that, since 1984, it has protected its yellow pages directories from unauthorized use by copyrighting the directories. *Id.* at 1200. BAPCO also sells advertising space and business listings in the yellow pages directories which it publishes. *Id.*

On 20 July 1992, BAPCO sent a letter (the "Cease-and-Desist Letter") to Database. *Id.* at 1206; *see also* Complaint, Ex. A (copy of Cease-and-Desist Letter). According to BAPCO, the Cease-and-Desist Letter was prompted when, in early 1992, BAPCO received a Database Quarterly Report stating that Database "had just completed compiling the [Database] Yellow Pages File from over 4,200 [y]ellow [p]ages directories." 28 April 1993 Decision at 1206. The Cease-and-Desist Letter asserted that Database was violating copyright law by using BAPCO's yellow pages to compile its lists and insisted that Database "immediately cease and desist from this type of activity." *Id.* at 1206. The Cease-and-Desist Letter also asserted that BAPCO's decision was supported by the Eleventh Circuit's ruling in *Bellsouth Advertising and Publishing Corp. v. Donnelly Information Publishing, Inc.,* 933 F.2d 952 (11th Cir.1991).[7] *Id.* According to Plaintiffs, prior to the Cease and Desist Letter, BAPCO never asserted Plaintiff's activities were an infringement of any copyrights. Complaint, ¶ 9.

On 26 August 1992, rather than respond to the Cease–and–Desist Letter, Plaintiffs filed the Complaint, seeking a declaratory judgment under the Copyright Act, 17 U.S.C. §§ 101 *et seq.,* that, *inter alia,* (1) Plaintiffs

have not infringed on any copyright or other right of BAPCO "by reason of Plaintiffs' preparation and sale of lists containing information taken from the yellow pages in the directories published by BAPCO" and (2) Plaintiffs' presentation and sale of their lists constitute a fair use of the information claimed by BAPCO to be copyrighted. Complaint at 5. Plaintiffs allege, *inter alia,* that BAPCO does not possess any valid copyright to the information which Plaintiffs extract from BAPCO's yellow pages and include in their lists. *Id.,* ¶¶ 19–25.

According to Plaintiffs, the lawsuit was brought

> [b]ecause the [Cease and Desist L]etter failed to state any willingness to negotiate with Database ... and, instead, insisted that Database ... "immediately cease and desist" from preparing its lists....

28 April 1993 Decision at 1206. Moreover, Plaintiffs argue:

> [The Cease-and-Desist Letter] presented our companies with an unreasonable risk in the absence of a quick and decisive decision as to our rights. The threat casts a shadow over all that these companies do until our rights are resolved. It impedes planning capabilities in the area of marketing, technological investment, expansion, personnel hiring and others.... It is imperative to the well-being, even survival of these companies that a quick decision be rendered in this case.

*Id.*

### B. *The 28 April 1993 Decision*

In arguing for transfer of this case to the Northern District of Georgia pursuant to 28

---

6. According to Plaintiffs, the operations of Database and Burnette are small in comparison to BAPCO. In 1991, the combined sales of Database and Burnette totalled less than twenty-one million dollars. 28 April 1993 Decision at 1200 n. 7.

7. On 4 November 1992, the Eleventh Circuit granted a rehearing *en banc* and vacated the decision in *Donnelly. See Bellsouth Advertising & Publishing Corp. v. Donnelly Information Publishing, Inc.,* 977 F.2d 1435 (11th Cir.1992). In the meantime, three copyright cases brought by BAPCO—*BellSouth Advertising and Publishing Corp. v. American Business Lists, Inc.,* No. 1:90-

CV–149–JEC, —— F.Supp. —— (N.D.Ga.), *BellSouth Advertising and Publishing Corp. v. EKI, Inc.,* No. 1:90–CV–971–JEC (N.D.Ga.) and *BellSouth Advertising and Publishing Corp. v. Dunn & Bradstreet Information Servs.,* No. 1:92–CV–2430–JEC (N.D.Ga.)—were stayed in December 1992 pending the *en banc* decision by the Eleventh Circuit in *Donnelly.* All of these cases have been assigned to Judge Julie E. Carnes of the Northern District of Georgia. Although these actions involve copyright issues regarding BAPCO's yellow pages similar to this case, they have no factual nexus with this action. *See* 28 April 1993 Decision at 1206 n. 23.

U.S.C. § 1406, BAPCO argued venue was inappropriate in the District of New Jersey because no personal jurisdiction could be asserted over BAPCO in this district. *See* 28 April 1993 Decision at 1207. Plaintiffs countered by arguing that (1) personal jurisdiction existed over BAPCO in New Jersey and (2) New Jersey constitutes the state in which a substantial part of the events giving rise to the claim occurred, allegedly making venue proper under both 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2). *See* 28 April 1993 Decision at 1207.

In the 28 April 1993 Decision, it was determined that, for the purposes of this case, personal jurisdiction could not be asserted over BAPCO in New Jersey. *Id.* at 1207–15. Therefore, venue was determined to be improper under 28 U.S.C. § 1391(b)(1). *See* 28 April 1993 Decision at 1214–15. Because personal jurisdiction was found to be lacking over BAPCO, the 28 April 1993 Decision did not consider the argument made by Plaintiffs that venue was appropriate under 28 U.S.C. § 1391(b)(2). *See* 28 April 1993 Decision at 1214–15. The 28 April 1993 Decision states:

> Plaintiffs argue venue is proper in New Jersey under 28 U.S.C. § 1391(b)(2) because this is the place where a substantial part of the events giving rise to the cause of action occurred. Opp.Brief at 25–26. Then, without citation to any authority, Plaintiffs argue that "[i]f venue is proper under *either* Section 1391(b)(2) or Section 1391(b)(1), the court must deny [BAPCO's]

**8.** The 28 April 1993 Decision noted at this point:

> This case presents a somewhat anomalous situation. On the one hand, as discussed above, sending of a cease-and-desist letter is insufficient to establish minimum contacts necessary for the assertion of specific personal jurisdiction.... On the other hand, some courts have held that venue is proper in a district merely because a cease-and-desist letter is received there. *See Millipore* [*Corp. v. University Patents, Inc.*, 682 F.Supp. 227, 234 (D.Del.1987)]; *Pennwalt* [*Corp. v. Horton Co.*, 582 F.Supp. 438, 440 (E.D.Pa.1984)].

> 28 April 1993 Decision at 1215 n. 34.

**9.** At this point, the 28 April 1993 Decision noted:

> Both venue and personal jurisdiction are proper in the Northern District of Georgia because BAPCO has its principal place of business and

motion to transfer under Section 1406(a)." *Id.* at 25 (emphasis in original)....

Even if venue were technically proper in this district under 28 U.S.C. § 1391(b)(2), this court lacks personal jurisdiction over BAPCO.[8] This being the case, a finding of proper venue under Section 1391(b)(2) is irrelevant. BAPCO can neither be compelled to defend this action in New Jersey nor is it subject to the jurisdiction of this court.

Accordingly, faced with the choice of dismissing this action for lack of personal jurisdiction or transferring the case to Georgia, "interests of justice" dictate that transfer is appropriate pursuant to 28 U.S.C. § 1406(a).[9] As the Supreme Court noted in *Goldlawr*, Section 1406(a) exists to "remov[e] whatever obstacles may impede an expeditious [and] orderly adjudication of cases on their merits." 369 U.S. at 466 [82 S.Ct. at 916]; *accord IUE AFL–CIO Pension Fund v. Locke Machine Co.*, 726 F.Supp. 561, 572 (D.N.J.1989) (same). Thus, in the absence of personal jurisdiction over BAPCO in New Jersey, this action will be and is transferred to the Northern District of Georgia.[10]

28 April 1993 Decision at 1214–15.

*Discussion*

### A. Motion for Reconsideration Standard of Review

Rule 59(e) of the Federal Rules of Civil Procedure permits a plaintiff to move to alter

> is subject to personal jurisdiction there. *See* 28 U.S.C. § 1391(b)(1) & (c).

> 28 April 1993 Decision at 1215 n. 35.

**10.** At this point, the 28 April 1993 Decision noted:

> Plaintiffs suggest that, because BAPCO has filed a motion to transfer under 28 U.S.C. § 1406 rather than a motion to dismiss for lack of personal jurisdiction, BAPCO has not correctly challenged the assertion of personal jurisdiction in New Jersey. *See* Opp.Brief at 25 n. 2. This argument is specious. Moreover, even if it were true, BAPCO preserved the defense of lack of personal jurisdiction in its answer, *see* Answer, filed 21 Oct. 1992, at 5–6. Accordingly, under Fed.R.Civ. 12(h)(1), BAPCO has not waived this defense and could bring a follow-up motion to dismiss for lack of personal jurisdiction. Such a course is (1)

or amend a judgment within ten days of entry of an order. Fed.R.Civ.P. 59(e). Local Rule 12I requires that the moving party "set forth concisely the matters or controlling decisions which counsel believes the court has overlooked." Local Rule 12I.

■ A motion for reconsideration or to alter or amend a judgment may be made for one of three reasons: "(1) [A]n intervening change in the controlling law has occurred, (2) evidence not previously available has become available, or (3) it is necessary to correct a clear error of law or prevent manifest injustice." *Weyerhaeuser Corp. v. Koppers Co.*, 771 F.Supp. 1406, 1419 (D.Md.1991) (citing *Natural Resources Defense Council v. U.S. E.P.A.*, 705 F.Supp. 698, 702 (D.D.C.), *vacated on other grounds*, 707 F.Supp. 3 (D.D.C.1989)); *see also Bermingham v. Sony Corp. of Am., Inc.*, 820 F.Supp. 834, 856 (D.N.J.1993); *Macario v. Pratt & Whitney Canada, Inc.*, No. 90–3906, 1991 WL 98902, *2, 1991 U.S.Dist.LEXIS 7429, *4–5 (E.D.Pa. 4 June 1991).

A motion for reconsideration is not a vehicle to reargue the motion or to present evidence which should have been raised before. *Bermingham*, 820 F.Supp. at 856; *Weyerhaeuser*, 771 F.Supp. at 1419. "A party seeking reconsideration must show more than a disagreement with the Court's decision, and 'recapitulation' of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden.'" *G–69 v. Degnan*, 748 F.Supp. 274, 275 (D.N.J.1990) (quoting *Carteret Savings Bank, F.A. v. Shushan*, 721 F.Supp. 705, 709 (D.N.J.1989); *appeal dismissed*, 919 F.2d 225 (3d Cir.1990), *vacated on other grounds*, 954 F.2d 141 (3d Cir. 1992)); *see also Egloff v. New Jersey Air Nat'l Guard*, 684 F.Supp. 1275, 1279 (D.N.J. 1988) (motion for reconsideration denied when plaintiff failed to cite any pertinent case law or fact court may have overlooked). When a motion for reconsideration raises only a party's disagreement with a decision of the court, that dispute "should be dealt

with in the normal appellate process, not on a motion for reargument under ... [Local] Rule 12I." *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F.Supp. 159, 163 (D.N.J.1988); *see also Bermingham*, 820 F.Supp. at 856.

In the motion for reconsideration *sub judice*, Plaintiffs do not contest the finding that personal jurisdiction was lacking over BAPCO in the District of New Jersey. *See* Moving Brief at 1. Instead, citing *Carteret Savings Bank v. Shusan*, 919 F.2d 225 (3rd Cir.1990), *cert. denied*, —— U.S. ——, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992), Plaintiffs request reconsideration of the portion of the 28 April 1993 Decision which, given the lack of personal jurisdiction over BAPCO, declined to determine whether venue was appropriate pursuant to 28 U.S.C. § 1391(b)(2). Moving Brief at 1. Plaintiffs allege this omission from the 28 April 1993 Decision constituted a clear error of law which requires reconsideration. *Id.* at 1199.

In support of the request for reconsideration, Plaintiffs argue:

> In *Carteret*, the Court of Appeals for the Third Circuit held that when venue is properly laid, even if *in personam* jurisdiction is lacking, the court cannot transfer the case to a different district against the wishes of the plaintiff, and thereby leaves dismissal as an alternative proper remedy. *Carteret*, 919 F.2d at 232. Therefore, because Database ... opposed and continues to oppose the motion to transfer, and because Database ... would rather have dismissal than transfer in order to perfect its right to appeal the issue of jurisdiction, it would be an error of law not to vacate the Court's Order of April 28, 1993.

> The remedy sought by Database ... by this motion is dismissal of the case.

Moving Brief at 1–2. Plaintiffs argue that, in view of *Carteret*, if venue is proper under Section 1391(b)(2), this action may not be transferred under 28 U.S.C. § 1406(a). Moving Brief at 3. Plaintiffs also renew their original arguments in support of the position

unnecessary, (2) would waste the resources of both this court and of the parties and (3) is exactly the situation sought to be avoided by 28 U.S.C. § 1406(a). *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466, 82 S.Ct. 913, 916, 8 L.Ed.2d 39 (1962).

28 April 1993 Decision at 1215 n. 36.

that venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b). *See infra* at pp. 1223–24 & n. 15.

### B. *Jurisdiction to Consider Plaintiffs' Motion For Reconsideration*

■ As an initial matter,. BAPCO argues this court has no jurisdiction to hear this case because, pursuant to the 28 April 1993 Decision, the record of this case was physically transferred to the Northern District of Georgia prior to the filing of the motion for reconsideration. Opp.Brief at 2. BAPCO points out:

> BAPCO's motion to transfer this action to the United States District Court for the Northern District of Georgia, Atlanta Division was considered and granted by this Court on April 28, 1993. In response to the Order of this Court, the record was then transmitted to the United States District Court for the Northern District of Georgia on May 3, 1993 and assigned Civil Action 1:93–CV–972–JTC. . . . Plaintiff's motion for reconsideration was not filed until May 12, 1993. . . . Rather than move to stay the execution of the Court's Order of April 28, [Plaintiffs] chose to seek reconsideration of the Order of Transfer.

Opp.Brief at 2–3; *see also* Letter, undated, from Clerk of the Northern District of Georgia to All Counsel of Record (attached as Exhibit A to Opp.Brief). Accordingly, BAPCO argues Plaintiffs' motion for reconsideration is not timely because "this Court had already transmitted the record for the case to the Northern District of Georgia" and "this Court has no jurisdiction over the action and should not consider [P]laintiffs' mo-

tion for reconsideration." *Id.* at 3 (citing numerous cases).

■ The rule is well-established that a transferor court loses jurisdiction to reconsider its order for transfer once the records in the transferred action are physically transferred to and received by the transferee court.[11] *See, e.g., In re Briscoe,* 976 F.2d 1425, 1426 (D.C.Cir.1992); *Wilson–Cook,* 942 F.2d at 250; *In re American President Lines, Ltd.,* 929 F.2d 226, 227 (6th Cir.1991); *In re Spillane,* 884 F.2d 642, 645 (1st Cir. 1989); *Robbins,* 779 F.2d at 355; *In re Sosa,* 712 F.2d 1479, 1480 (D.C.Cir.1983); *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.,* 689 F.2d 982, 988 n. 10 (11th Cir.1982); *In re Nine Mile, Ltd.,* 673 F.2d 242, 243 (8th Cir.1982); *In re.·Southwestern Mobile Homes, Inc.,* 317 F.2d 65,.66 (5th Cir.1963); *Drabik v. Murphy,* 246 F.2d 408, 409 (2d Cir.1957); *Sheldon,* 52 F.R.D. at 5; *see··also Chrysler Credit,* 928 F.2d at 1516–17 (jurisdiction of transferor court ends when case documents are docketed in transferee court); *Lou v. Belzberg,* 834 F.2d 730, 733 (9th Cir.1987) (same), *cert. denied,* 485 U.S. 993, 108 S.Ct. 1302, 99 L.Ed.2d 512 (1988).

In this case, the case file was sent from the Clerk's Office in this district on 29 April 1993 and was received and docketed by the Clerk's Office in the Northern District of Georgia on 3 May 1993. Plaintiffs, however, did not file their motion for reconsideration until 12 May 1993, nine days after the case file had been physically transferred to the Northern District of Georgia. Given this fact, as well the fact that Plaintiffs did not request a stay of the transfer order for the

---

**11.** The rule fixing loss of jurisdiction upon receipt of the records by the transferee court, as opposed to terminating the jurisdiction of the transferror court immediately upon entry of the order of transfer, is premised on the practical consideration that "some court should have jurisdiction over a case at all times." *Wilson–Cook Medical, Inc. v. Wilson,* 942 F.2d 247, 250 (4th Cir.1991) (citing *Semro v. Halstead Enter., Inc.,* 619 F.Supp. 682, 682–83 n. 1 (N.D.Ill.1985); *Sheldon v. Amperex Elec. Corp.,* 52 F.R.D. 1, 5 (E.D.N.Y.), *aff'd,* 449 F.2d 146 (2d Cir.1971)). If the rule were otherwise, no court would have jurisdiction over the transferred case from the time the order of transfer was filed by the transferor court to the time the case documents were

received by the transferee court. *See Sheldon,* 52 F.R.D. at 5–6.

In *Koehring Co. v. Hyde Constr. Co.,* 382 U.S. 362, 86 S.Ct. 522, 15 L.Ed.2d 416 (1966), *reh'g denied,* 383 U.S. 939, 86 S.Ct. 1062, 15 L.Ed. 857 (1966), the Supreme Court suggested in a footnote that the transferor court "may lose jurisdiction" before the physical transfer of the record. *Id.* at 365 n. 4, 86 S.Ct. at 524 n. 4. Subsequent interpretation of *Koehring,* however, has limited its application to "extraordinary" cases, not relevant here. *Robbins v. Pocket Beverage Co.,* 779 F.2d 351, 355 (7th Cir.1985) (emphasis in original); *see also Chrysler Credit Corp. v. County Chrysler, Inc.,* 928 F.2d 1509, 1517 n. 5. (10th Cir.1991).

purpose filing a motion for reconsideration or an appeal, it appears from the case law discussed above that there is no jurisdiction for this court to reconsider its motion for transfer.

In opposition, Plaintiffs argue that, when a court lacks the power to order transfer, "any purported transfer is a nullity and it can be reviewed by the circuit in which the transferor court sits." Reply Brief at 1 (citing *Swindell–Dressler Corp. v. Dumbauld,* 308 F.2d 267, 274 (3d Cir.1962); *Farrell v. Wyatt,* 408 F.2d 662, 664 (2d Cir.1969)). For this reason, Plaintiffs argue transmission of the record in this case is irrelevant and "does not have the legal effect of divesting this Court of jurisdiction to reconsider [the 28 April 1993 Decision]." *Id.* at 2.

This argument is not entirely without merit. Nevertheless, while it is true that "the mere transfer of the record cannot ratify an otherwise invalid transfer," *Chrysler Credit,* 928 F.2d at 1517 n. 6; *see also Farrell,* 408 F.2d at 664; *Swindell,* 308 F.2d at 274, this legal proposition is not applicable in this case. As discussed below, *see infra* at pp. 1223–27, this case was not improperly transferred to the Northern District of Georgia because, even under 28 U.S.C. § 1391(b), venue is not proper in the District of New Jersey.

Plaintiffs also contend that transfer of the record in this case occurred too quickly. Plaintiffs state:

> In order to permit orderly review of a transfer order, physical transfer of the record to the transferee district is ordinarily delayed for a period of time after entry of the transfer order. This is done through local rule or custom and it avoids the situation presented in the case at bar.... Where, however, the record has been too quickly transmitted, an approved procedure is [for the] transferor court and clerk to request the transferee court and clerk to return the record to the transferror court.

*Id.* (citing *Nine Mile,* 673 F.2d at 243–44).

Although the case file in this case was transferred the day after the order of transfer was signed and filed, Plaintiffs' argument is rejected. As an initial matter, Plaintiffs have neither cited nor does there exist any rule in the District of New Jersey or in the Third Circuit which requires the Clerk of the Court to delay transmittal of a case file once a case has been ordered transferred to another judicial district. As a court stated in a similar situation in *Blankenship v. Allis–Chalmers Corp.,* 460 F.Supp. 37 (N.D.Miss. 1978):

> Plaintiff refers to the practice of some courts of automatically staying a transfer order to allow the party opposing the transfer an opportunity to seek reconsideration and/or appellate review of the transfer order. Regardless of the desirability of such a practice, this district does not have a local rule automatically staying the transfer of a case nor is it the practice of the clerk to wait a certain number of days before mailing the papers to the transferee court. The transfer order directed the clerk to "forthwith transfer" the pleadings to the transferee court and since plaintiff did not seek a stay of the transfer order, the clerk complied with that order.

*Id.* at 40 (citations omitted). *Compare Starnes v. McGuire,* 512 F.2d 918, 924 (D.C.Cir.1974) (*en banc*) (requiring district courts to delay transfers for twenty days to allow review of transfer orders); *Semro,* 619 F.Supp. at 683 (Clerk of Northern District of Illinois maintained policy of holding transfer papers for minimum of thirty days after entry of transfer order).

While some courts have indicated "the preferable approach" is to "hold up the transfer for a reasonable time pending possible petition for reconsideration or review," *see, e.g., Chrysler Credit,* 928 F.2d at 1517; *Nine Mile,* 673 F.2d at 243, other courts have not objected to the immediate transfer of a case file when (1) there was no local rule or policy automatically staying transfer orders and/or (2) no stay application or notice was received from the aggrieved party indicating a motion for reconsideration or an appeal was forthcoming. *See, e.g., Pendleton v. Armortec, Inc.,* 729 F.Supp. 495, 497 (M.D.La.1989); *Lands v. St. Louis S.R. Co.,* 648 F.Supp. 322, 325–26 (E.D.Tex.1986); *Coleman v. Mobil Oil Corp.,* 643 F.Supp. 1104, 1107 (E.D.Tex.

1986); *Blankenship,* 460 F.Supp. at 40; *see also ·Southwestern Mobile Homes,* 317 F.2d at 66 (lack of jurisdiction upheld when no stay was sought, despite fact that transfer of case file occurred only two days after entry of transfer order and motion to file mandamus petition filed only four days after entry of transfer order); *Drabik,* 246 F.2d at 409 (same, when transfer of case file occurred only four days after entry of transfer order and motion for reconsideration filed only six days after entry of transfer order). As the court explained in *Drabik:*

> When th[e] motion [for reconsideration] came to be heard, the District Court for the Southern District of New York had already lost jurisdiction over the action because the transfer was then complete.... If the plaintiff had moved seasonably for a stay, and the stay had been denied, his motion might conceivably have preserved his right, but he ·did not do so. Hence it follows that no relief remained open to him in the District Court for the Southern District of New York.

246 F.2d at 409.

In this case, Plaintiffs neither sought a stay of the transfer order nor filed their motion for reconsideration (or even notified the court that such a motion was forthcoming) until the afternoon of the last possible day, ten days after entry of the transfer order. *See* Local Rule 12I ("motion for reargument shall be served and filed within 10 days after filing of Court's order"). Because Plaintiffs failed to request a stay of the transfer order, and because the Clerk of the Court properly effectuated the transfer order and sent the case file to the Northern District of Georgia prior to filing of Plaintiffs' motion for reconsideration, it appears this court has no jurisdiction to consider Plaintiffs' motion for reconsideration.[12]

12. Nevertheless, even if jurisdiction existed, Plaintiffs' motion for reconsideration is without merit for the reasons discussed below.

13. Venue in a declaratory judgment action for patent or copyright infringement is governed by the general venue statute at 28 U.S.C. § 1391(b), rather than by the specific venue statute for infringement actions at 28 U.S.C. § 1400(b).

### C. Transfer Pursuant to 28 U.S.C. § 1406(a)

■■■ Pursuant to 28 U.S.C. §·1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interests of justice, transfer such case to any district or division in which it could have been brought." *Id.* A district court may transfer a case under Section 1406(a) regardless of whether personal jurisdiction exists over the defendants. *Goldlawr,* 369 U.S. at 465–66, 82 S.Ct. at 915; *see also Carteret,* 919 F.2d at 231; *United States v. Berkowitz,* 328 F.2d 358, 361 (3d Cir.), *cert. denied,* 379 U.S. 821, 85 S.Ct. 42, 13 L.Ed.2d 32 (1964). Jurisdiction in the present case is premised on 28 U.S.C. §§ 1331, 1338 and 2201–02. Accordingly, proper venue in this case is controlled by 28 U.S.C. § 1391(b).[13]

### D. Venue Under 28 U.S.C. § 1391(b)

Section 1391(b) provides in pertinent part:
> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may ... be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a *substantial part* of the events or omissions giving rise to the· claim occurred ... or (3) a ·judicial district in which any defendant may be found, if there is no judicial district· in which the action may otherwise· be brought.

28 U.S.C. § 1391(b). As ·discussed, Plaintiffs argue venue in this case is proper in the· District of New Jersey ·pursuant to Section 1391·(b)(2) and transfer pursuant to 28 U.S.C. § 1406(a) was· inappropriate. These arguments are without merit.

Plaintiffs argue venue is appropriate in the District of New Jersey because it is in New Jersey· that they received the Cease-and-De-

*Millipore,* 682 F.Supp. at 234; *Pennwalt,* 582 F.Supp. at 440; *Dicar, Inc. v. L.E. Sauer Mach. Co.,* 530 F.Supp. 1083, 1088 (D.N.J.1982); *see also Gesco Int'l, Inc. v. Luther Medical Prods., Inc.,*· No. SA–89–CA–0872, 1990 WL 505456, 1990 U.S.Dist.LEXIS 18877 (W.D.Tex.1990) (citing additional cases).

sist Letter. Moving Brief at 3–4. Indeed, without much explanation, some cases have found that receipt of a cease-and-desist letter can satisfy the venue requirements of Section 1391(b)(2). *See Velcro Group Corp. v. Billarant,* 692 F.Supp. 1443, 1450–51 (D.N.H.1988); *Millipore,* 682 F.Supp. at 234; *Pennwalt,* 582 F.Supp. at 440. As the *Pennwalt* Court stated:

> A declaratory judgment action seeking (1) to invalidate a patent; and (2) a declaration of non-infringement, arises where the alleged infringer is located, receives the damaging charges of infringement, or suffers economic injury as a result of the charges.

582 F.Supp. at 440.

Other cases, however, have rejected this approach. *See Gesco Int'l, Inc. v. Luther Medical Prods., Inc.,* No. SA–89–CA–0872, 1990 WL 505456, 1990 U.S.Dist.LEXIS 18877 (W.D.Tex.1990); *see also KVH Indus., Inc. v. Moore,* 789 F.Supp. 69, 73 (D.R.I.1992) (rejecting, as unsupported, assertion that cease-and-desist letter gives rise to venue in action for declaratory judgment of non-infringement and invalidity); *Lex Computer & Mgmt. Corp. v. Eslinger & Pelton, P.C.,* 676 F.Supp. 399, 406 n. 7 (D.N.H.1987) (questioning validity of finding venue in forum into which cease-and-desist letters were sent). In the context of this case, the approach finding that receipt of a cease-and-desist letter is sufficient to establish venue under Section 1391(b)(2) is rejected.

In 1990, Section 1391(b)(2) was amended (the "1990 Amendment") to provide that venue was proper in "a judicial district in which a *substantial part* of the events or omissions giving rise to the claim occurred." *See* Judicial Improvements Act of 1990, Pub.L. 101–650, Title III, § 311, 104 Stat. 5114 (codified at 28 U.S.C. § 1391(b)(2) (emphasis added)). In employing this language, Congress repealed and replaced the previous language of Section 1391(b), which provided that venue was appropriate in a judicial district "in which the *claim arose.*" *See VDI Technologies v. Price,* 781 F.Supp. 85, 92–93 (D.N.H. 1991) (citing pre-amendment language) (emphasis added).

The purpose of the 1990 Amendment was to clarify when venue was appropriate under Section 1391(b)(2). As the House Report of the Committee on the Judiciary stated:

> The great advantage of referring to the place where things happened … is that it avoids the litigation breeding phrase "in which the claim arose."

H.R. No. 101–734, 101st Cong., 2d Sess. 23 (1990), *reprinted in* 1990 U.S.Code Cong. & Admin.News at pp. 6802, 6869; *see also* Siegel, *Commentary on 1990 Revision of Subdivisions (a), (b), and (e),* in 28 U.S.C. 1391, 4 [hereinafter, "Siegel, *Commentary* "] (1990 Amendment eliminated "pinpointing problem that created difficulties under the now-discarded 'claim arose' standard"). Moreover, by adding the "substantial" activities language, the 1990 Amendment was drafted to tie-in with the standard for establishing personal jurisdiction in a given forum. *See* H.R. No. 101–734, 101st Cong., 2d Sess. 23 (1990), *reprinted in* 1990 U.S.Code Cong. & Admin.News at 6869 (stating that "the 'events … occurred' idea is what longarm personal jurisdiction is based on").

On the one hand, the 1990 Amendment had the effect of establishing that venue could be proper in more than one judicial district, provided that "substantial" activities occurred in multiple judicial districts. *See* Siegel, *Commentary,* at 4 ("fact that substantial activities took place in district B does not disqualify district A as proper venue as long as 'substantial activities' took place in A, too … even if it is shown that the activities in B were more substantial"); *accord VDI,* 781 F.Supp. at 94–95. On the other hand, the 1990 Amendment logically operates to restrict venue only to those judicial districts in which "substantial" activities giving rise to the claim occurred.

Cases such as *Pennwalt* and its progeny, which establish a *per se* rule that venue is appropriate in the judicial district in which an alleged infringer receives a cease-and-desist letter, establish venue without regard to (1) whether the activities which took place in that forum are substantial [14] or (2) wheth-

---

**14.** All cases cited by Plaintiffs and, indeed, all

cases which research has revealed have held that

er the purposes of the statutory venue requirement are fulfilled.

Stated plainly, it is difficult to accept the assertion that merely sending a cease-and-desist letter into a forum, in a declaratory judgment action for non-infringement and/or copyright invalidity, constitutes "substantial" activity as the term is used in Section 1391(b)(2). While such a letter may provoke an alleged infringer to file such a lawsuit, the letter itself has nothing to do with whether the copyright is valid or whether infringement has occurred. In other words, as discussed below, the cease-and-desist letter does not constitute a "substantial" activity "giving rise to the claim(s)." 28 U.S.C. § 1391(b)(2).

In *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991), the Supreme Court indicated that two elements are central to determinations of copyright infringement and validity: (1) ownership of a valid copyright and (2) copying of constituent elements of a work that are original. *Id.* at ——, 111 S.Ct. at 1296. Because BAPCO creates and compiles its yellow pages directories in Georgia, the copyright originated and was developed in Georgia. Accordingly, the copyright considerations of ownership, originality and identification of constituent elements all arise from actions taken by BAPCO in Georgia. The existence and validity of BAPCO's copyright are related primarily to Georgia, thereby indicating that "a substantial part of the events ... giving rise to the claim occurred" in Georgia.[15] *See* 28 U.S.C. § 1391(b).

A number of analogous cases in the patent area, all involving declaratory judgments of patent invalidity and non-infringement, support finding that venue in Georgia is appropriate under Section 1391(b)(2). For instance, in *Unistrut Corp. v. Baldwin*, 815 F.Supp. 1025 (E.D.Mich.1993), the court explained:

> While it is true that institution of the action was sparked by defendant's letters requesting compensation for plaintiffs' alleged infringement on defendant's patent, these letters did not cause the alleged patent infringement that is ultimately the subject of this suit. The transaction at issue here is essentially the granting, in Washington, D.C., of a patent which plaintiffs are alleging is invalid.

*Id.* at 1027; *see also Starline Optical Corp. v. Caldwell*, 598 F.Supp. 1023, 1026 (D.N.J. 1984). Similarly, in *International Communications, Inc. v. Rates Technology, Inc.*, 694 F.Supp. 1347 (E.D.Wis.1988), the court stated:

> ICI maintains that the source of its cause of action arises ... from [the letter] from [the defendant] charging patent infringement [that] was received by the plaintiff in this forum [*i.e.* Wisconsin].... However, the *real source* of plaintiff's cause of action is not the correspondence received, but *the existence and ownership of the patent.* The defendants' ownership and use of the patent is not in any way connected with the State of Wisconsin.

receipt of a cease-and-desist letter is sufficient to establish venue, were decided prior to the 1990 Amendment. *See* Moving Brief at 3–4; *see also supra* at pp. 1223–24. Although Plaintiffs argue the holdings of *Pennwalt* and its progeny "were not overruled or diminished by the 1990 [A]mendment," Moving Brief at 4 n. 1, this contention is without merit. *Pennwalt* and its progeny held only that the receipt of a cease-and-desist letter in a declaratory judgment action was sufficient to meet the ambiguous "where the cause of action arose" standard; these cases did *not* hold that such receipt constituted a "substantial" activity "giving rise to the cause of action," as the term is used by the post–1990 Amendment version of Section 1391(b)(2).

**15.** Without citation to legal authority, Plaintiffs suggest venue is also proper in New Jersey be-

cause, in addition to being the place of receipt of the Cease-and-Desist Letter, New Jersey is the "district where the alleged copyright infringement occurred." Moving Brief at 4 n. 1; *see also* Plaintiffs' Answering Brief on Defendant's Motion to Transfer Under 28 U.S.C. §§ 1404(a) and 1406(a) at 25–26 (submitted in connection with 28 April 1993 Decision). Plaintiffs have neither explained nor attempted to support their assertion that this activity satisfies the present requirements of Section 1391(b)(2); this argument, therefore, is not considered. Moreover, even if this argument were considered, it is difficult to accept that Plaintiffs be permitted to manufacture venue in their home forum by activities which are alleged to infringe on another party's copyright.

*Id.* at 1352 (emphasis added); *see also KVH Indus.,* 789 F.Supp. at 71.

To find that the mere sending of the Cease-and-Desist Letter into this judicial district sufficiently established venue would be inconsistent with the purposes of the statutory venue requirement. Venue statutes serve "t[o] protect[ ] a *defendant* from the inconvenience of having to defend an action in a trial court that is either remote from the defendant's residence, or from the place where the acts underlying the controversy occurred," and they do so by "limiting plaintiff's choice of forum to only certain courts from among all those which might otherwise acquire personal jurisdiction over the defendant." *VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 1576 (Fed.Cir.1990) (emphasis added), *cert. denied,* 499 U.S. 922, 111 S.Ct. 1315, 113 L.Ed.2d 248 (1991); *accord VDI Technologies,* 781 F.Supp. at 92.

In *Leroy v. Great Western United Corp.,* 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), the Supreme Court explained this purpose. The Court stated:

> [T]he purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial. For that reason, Congress has generally not made the residence of the plaintiff a basis for venue in nondiversity cases.

443 U.S. at 183–84, 99 S.Ct. at 2716–17 (emphasis in original).[16] With specific regard to Section 1391(b), the Court stated: "[I]t is absolutely clear that Congress did not intend to provide venue at the residence of the plaintiff or to give that party an unfettered choice among a host of different districts." *Id.* at 185, 99 S.Ct. at 2717 (citing *Denver & R.G.W.R. Co. v. Brotherhood of Railroad Trainmen,* 387 U.S. 556, 560, 87 S.Ct. 1746, 1748, 18 L.Ed.2d 954 (1967)).

The *per se* rule of *Pennwalt* and its progeny contradicts these limitations. Because cease-and-desist letters are logically sent to an alleged infringer in its home forum, a rule which automatically provides for venue in the judicial district of receipt of such a letter has the effect of establishing venue in the plaintiff's home forum, without regard to the inconvenience to the defendant at having to defend an action in that forum or whether the defendant has engaged in substantial activities in that forum. This result is contrary to both the letter and spirit of the venue requirement. As discussed, not only has the place of plaintiff's residence been intentionally omitted from Section 1391(b) as a basis for venue but, as the Supreme Court has indicated, the convenience to the defendant—*not* to the plaintiff—must be considered for determining proper venue. *Leroy,* 443 U.S. at 185, 99 S.Ct. at 2717; *see also Advanced Dynamics Corp. v. Mitech Corp.,* 729 F.Supp. 519, 521 (N.D.Tex.1990) ("Congress' intentions as to venue are clearly directed towards fairness and convenience to the defendant").[17]

In a case such as this, in which personal jurisdiction over the defendant is lacking in New Jersey, *see* 28 April 1993 Decision at 1207–15, a finding of venue under Section 1391(b)(2) based on the receipt of the Cease-and-Desist Letter in New Jersey, is particularly inappropriate.[18] *See VE Holding,* 917

---

**16.** *Leroy,* decided prior to the 1990 Amendments, set forth "weight of contacts" test to assist courts in determining proper venue when, in the "unusual case," venue was appropriate in more than one judicial district. *See* 443 U.S. at 184–87, 99 S.Ct. at 2716–18. To the extent *Leroy* suggests that venue can exist only in one jurisdiction, it would appear to be superseded by the 1990 Amendments. *See supra* at p. 22. Nevertheless, to the extent *Leroy* discusses the policies behind Section 1391(b)(2), as well as the considerations relevant to a finding venue under Section 1391(b)(2), *Leroy* remains viable authority.

**17.** While it would be fair to find venue in a forum which, in addition to being the place of receipt of a cease-and-desist letter, was a forum

in which the defendant engaged in substantial activities, BAPCO has not engaged in substantial activities in New Jersey. *See* 28 April 1993 Decision at 1207–15.

**18.** Courts have consistently held that the sending of a cease and desist letter in patent or copyright cases is alone insufficient to establish the minimum contacts necessary for specific personal jurisdiction. *See Starline Optical,* 598 F.Supp. at 1027; *see also E.J. McGowan & Assoc., Inc. v. Biotechnologies, Inc.,* 736 F.Supp. 808, 812 (N.D.Ill.1990); *Gesco,* 1990 WL 505456, 1990 U.S.Dist.LEXIS 18877; *Kash 'n Gold, Ltd. v. ATSPI, Inc.,* 690 F.Supp. 1160, 1163 (E.D.N.Y. 1988); *Tol–O–Matic, Inc. v. Proma Produkt–Und Marketing Gesellschaft, m.b.H.,* 690 F.Supp. 798,

F.2d at 1576 (venue statutes "limit[ ] plaintiff's choice of forum to only certain courts from *among all those which might otherwise acquire personal jurisdiction over the defendant*") (emphasis added); *accord VDI Technologies*, 781 F.Supp. at 92; *see also* H.R. No. 101–734, 101st Cong., 2d Sess. 23 (1990), *reprinted in* 1990 U.S.Code Cong. & Admin.News at 6869 (1990 Amendment was designed to bring venue requirements in line with personal jurisdiction requirement).

As discussed at length in the 28 April 1993 Decision, *see id.* at 1207–15, BAPCO's contacts with New Jersey are almost non-existent, while its contacts with Georgia are substantial. BAPCO (1) is a Georgia corporation, (2) has its principal place of business in Georgia, (3) has no office, telephone or bank account in New Jersey, (4) does not maintain any employees in New Jersey, (5) does not hold itself out to the public as doing business in New Jersey, (6) has not qualified with the Secretary of State's office in New Jersey to do business within the state, (7) does not have a designated agent for the receipt of service of process in New Jersey, (8) does not pay taxes in New Jersey, (9) does not create, publish or distribute any yellow pages directories for use by telephone subscribers in New Jersey and (10) does not solicit sales of advertisements for its Yellow Pages in New Jersey. *Id.* at 1199–1200. Moreover, the copyrights were created and developed in Georgia and three related infringement/invalidity suits are already being maintained in the Northern District of Georgia. *See* 28

April 1993 Decision at 1206 n. 23; *see also Gesco*, 1990 WL 505456 at ** 15, 18, 1990 U.S.Dist.LEXIS 18877 at ** 17, 19.

Given these extensive Georgia contacts, and the lack of any significant New Jersey contacts or substantial activity by BAPCO in New Jersey, the convenience to the defendant BAPCO is clearly furthered by designating Georgia—*not* New Jersey—as a proper forum for this litigation.[19] Accordingly, a finding that receipt of the Cease-and-Desist Letter in New Jersey was *per se* sufficient to establish venue would contradicts Section 1391(b)(2) and would improperly establish venue in this judicial district.

*Conclusion*

For the reasons set forth above, venue in the District of New Jersey is not proper pursuant to 28 U.S.C. § 1391(b)(2). Accordingly, the motion of Plaintiffs to reconsider the 28 April 1993 Decision transferring this case to the Northern District of Georgia pursuant to 28 U.S.C. § 1406(a) is denied.[20]

---

801 (D.Minn.1987); *Classic Golf Co. v. Karsten Mfg. Co.*, 231 U.S.P.Q. (BNA) 884, 885, 1986 WL 8953 (N.D.Ill.1986) (citing additional cases).

**19.** As well, because the compiling of BAPCO's Yellow Pages takes place in Georgia and the distribution of the Yellow Pages takes place in ten Southern States, witnesses who can testify regarding the creation and distribution, as well as to the creation and maintenance of BAPCO's alleged copyrighting of its Yellow Pages, are greatly convenienced by transfer of this case from New Jersey to Georgia. Similarly, other evidence in this case relevant to these issues is more accessible in Georgia than in New Jersey. *See Leroy*, 443 U.S. at 185–87, 99 S.Ct. at 2717–18 (considerations generally relevant to finding of venue under Section 1391(b)(2) are "the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defen-

dant (but *not* of the plaintiff)") (emphasis in original).

**20.** Because venue is not proper in the District of New Jersey pursuant to Section 1391(b)(2), and because it has already been determined that venue in New Jersey is not proper pursuant to Section 1391(b)(1), *see* 28 April 1993 Decision, Plaintiffs' argument that *Carteret* requires vacating of the 28 April 1993 Decision and dismissing this action, *see supra* at pp. 1220–21, is without merit. *See Carteret*, 919 F.2d at 232 ("[w]e know of no authority to support a conclusion that a plaintiff *properly* laying venue may be compelled to accept a transfer under section 1406(a) against its wishes") (emphasis added); *see also* Moving Brief at 4 (recognizing that *Carteret* concerned case in which venue was properly laid in transferror district).