AMERICAN HEART DISEASE PREVEN-
TION FOUNDATION, INC., a nonprofit
corporation, Plaintiff,

v.

Byron C. HUGHEY, Jerry C. Watson; The
Watson & Hughey Company; Washing-
ton List; Capital List; Foxhall Corpora-
tion d/b/a The Art Department; Direct
Response Consulting Services; Alame-
da–Ford Group, Inc.; Chapman Re-
sponse Services, Ltd.; and John Does 1–
50, inclusive, Defendants.

No. 94–4154–SAC.

United States District Court,
D. Kansas.

Sept. 6, 1995.

Memorandum Dismissing Motion to Alter
or Amend Oct. 10, 1995.

Cheryl D. Myers, Michael B. Myers,
Myers & Myers, Topeka, KS, for American
Heart Disease Prevention Foundation, Inc.

David E. Bruns, Wayne T. Stratton, Curtis
J. Waugh, Goodell, Stratton, Edmonds &
Palmer, Topeka, KS, Richard O. Wolf,
Christina Burkholder, Direct Response Con-
sulting Services, McLean, VA, for Byron C.
Hughey, Jerry C. Watson, Watson & Hughey
Company, Washington List, Capital List,
Foxhall Corporation, Alameda–Ford Group,
Inc., Chapman Response Services, Ltd.

Christina Burkholder, Direct Response
Consulting Services, McLean, VA, for John
Does, 1–50.

David E. Bruns, Wayne T. Stratton, Curtis
J. Waugh, Goodell, Stratton, Edmonds &
Palmer, Topeka, KS, Richard O. Wolf, Direct
Response Consulting Services, McLean, VA,
for Direct Response Consulting Services.

## MEMORANDUM AND ORDER

CROW, District Judge.

On August 17, 1994, the plaintiff, American
Heart Disease Prevention Foundation (AH),
filed a forty-two page verified complaint al-
leging, *inter alia*, claims under the Racke-
teer Influenced and Corrupt Organizations
Act against the defendants.[1] The complaint
is divided into one hundred and forty-five
separate paragraphs. Attached to the com-
plaint are numerous exhibits. Highly sum-
marized, AH makes the following allegations:
AH was organized under § 501(c)(3) of the

---

1. AH's complaint asserts five separate claims for
relief: four counts arising under RICO and one
claim arising under state common law for breach
of contract and breach of fiduciary duty.

Internal Revenue Code. AH is incorporated in the State of Virginia and is currently registered in the State of Kansas as a charity. The Watson & Hughey Company is or was a Virginia partnership; Jerry C. Watson and Byron C. Hughey were its partners. The Watson & Hughey Company represented itself to be a direct mail fundraising counseling service and/or solicitor. Direct Response Consulting Services is a Virginia partnership composed of two corporations, Chapman Response Services, Ltd., and Alameda–Ford Group, Inc. Direct Response Consulting services is the new name of the Watson & Hughey Company and is its successor in interest. Foxhall Corporation and Washington List and/or Capital List are also companies owned and controlled by Jerry Watson and Byron Hughey.

AH alleges that the defendants conspired with one another to defraud it and others, including the persons who were solicited for funds. AH claims that Watson & Hughey solicited it to become its exclusive fundraising counsel. As part of its scheme, Watson & Hughey induced AH to enter an unconscionable contract for its services as professional fund raising counsel. Through this contract, Watson & Hughey were able to gain control, manipulate and essentially bilk AH. The defendants' scheme was essentially two-fold: First, the contract permitted Watson & Hughey to rack up extraordinary expenses, saddling AH with substantial costs but returning little in the way of financial benefits. Second, through its relationship with AH, the defendants were able to use AH's list of charitable donors primarily for their benefit.

In perpetrating their fraudulent scheme, AH alleges that the defendants engaged in conduct violative of federal law, namely mail and wire fraud, extortion and conspiracy, and interstate transportation of persons and property obtained by fraud. As a result of the defendants' scheme, AH claims loss of reputation, loss of a loyal donor list, financial losses, administrative costs and attorney's fees.

This case comes before the court upon the defendants' motion to dismiss the complaint due to improper venue (Dk. 21). The defendants seek dismissal of the case pursuant to Fed.R.Civ.P. 12(b)(3). In the alternative, the defendants request an order pursuant to 28 U.S.C. § 1404(a), transferring this case to the United States District Court for the Eastern District of Virginia, Alexandria District.[2] The defendants have also filed a motion to dismiss (Dk. 19) pursuant to Fed. R.Civ.P. 9(b) and Fed.R.Civ.P. 12(b)(6).

In general, the defendants contend that venue is not proper in Kansas as this case "involves an ordinary business dispute between residents of the Commonwealth of Virginia over their contractual relationship which occurred virtually entirely in Virginia." "Indeed, the only discernable connection to Kansas stated in the Complaint is the fact that Plaintiff's counsel is from Kansas." In support of their motion the defendants advance the following arguments:

(1) The contracts with AH had no connection with Kansas;

(2) The contractual arrangements with AH were created, maintained and terminated in Virginia;

(3) The "Escrow Agreement," which specified the manner in which all funds raised under the "Fundraising Agreement" were to be collected and dispersed states a Virginia address and expressly provides that the "validity, interpretation, and performance of this [Escrow] Agreement shall be controlled by and construed under the laws of . . . Virginia."[3]

(4) Neither the defendants nor AH are connected with Kansas;

(5) None of the defendants' alleged acts or omissions occurred in Kansas;

(6) There is no allegation that the defendants conspired in Kansas, or that the alleged RICO "enterprise" was directed from or operated within Kansas.

2. On August 26, 1995, this court entered an order denying without prejudice the defendants' motion to dismiss or in the alternative change of venue. The court, sua sponte, sets aside that order and considers the motion on the merits.

3. Conversely, there is no allegation that the laws of Kansas will apply to any of AH's claims.

The defendants note that "there is a grand total of three references to Kansas in the Complaint, none of which advance Plaintiff's venue claim." The defendants urge the court to reject the plaintiff's unsupported allegation that Kansas is a proper venue.

AH responds, arguing that Kansas is a proper venue. AH contends that its choice of forum is entitled to considerable deference. AH contends that its complaint demonstrates that a substantial part of the events or omissions giving rise to its claims occurred in Kansas. AH contends that approximately half of the total amount spent on vendor fees and work was directed by Watson & Hughey in Kansas. Watson & Hughey "chose a Kansas company, Southwest Publishing, to compile and/or print and then mail the solicitations planned by Watson & Hughey." "The charity's records show over 5.2 million dollars were paid in Kansas for production work, letter shop fees, and postage."

> Therefore, approximately one-half (certainly a substantial amount), of the activity required to do the charities (sic) mailings occurred in Kansas or as the result of communications with a Kansas company. The monetary disputes integral to plaintiff's complaint involve millions of dollars flowing from the charity's revenues through its escrow account to Kansas. Work was done in Kansas a result of communications to and from Kansas. Mailings were sent throughout the United States and the process of revenue generation continued with the damages of which the plaintiff complains being integrally related to Kansas.

AH contends that as a result of the defendants' actions in Kansas, it has suffered damages.

AH also notes that Southwest Publishing has filed for bankruptcy under Chapter 11 of the bankruptcy code. AH contends that the acts of the defendants have lead to a lawsuit by Southwest Publishing against AH in an adversary proceeding before the bankruptcy court sitting in Topeka, Kansas. According to AH's brief,

> Since there is already a pending action in this jurisdiction relating to plaintiff's

complaint, plaintiff believes this adversary proceeding should be consolidated with this lawsuit. Plaintiff intends to file a motion to withdraw reference to accomplish this.

AH's brief at 9. If the defendants' motion is granted, it will be compelled to try this action in two venues.

AH concedes that "[t]here is undoubtedly a significant amount of computerized information which is physically located in Virginia." AH also concedes that "[c]ertain party witnesses and corporate representatives are located in Virginia." AH argues, however, that other significant non-party witnesses are located throughout the country. In particular, AH lists employees of Southwest Publishing, residents of Kansas, as potential witnesses.

In their reply, the defendants challenge AH's continued assertion that venue is proper. The defendants contend that it is inappropriate for AH to attempt to amend its complaint in its brief responding to their motion to dismiss. As to AH's arguments regarding the pending adversary proceeding, the defendants respond:

> Perhaps because the ties to Virginia are so pervasive, Plaintiff is reduced to asserting that this case should not be transferred, because the "pending bankruptcy adversary proceeding involving Southwest Publishing should be consolidated with this case." See Plaintiff's Memorandum at p. 21. Given that Plaintiff has not, in fact, moved to consolidate the two cases, its argument is irrelevant. Furthermore, Plaintiff's actions and inaction belie its assertion on this matter.

> For example, Plaintiff's Memorandum fails to disclose that the "bankruptcy adversary proceeding" has been pending since 1991. Plaintiff's Memorandum fails to explain why, in all these years that have passed it never bothered to try to implead Defendants as parties. Plaintiff does not even bother to allege facts showing that its RICO and common law claims are so intertwined with the claims in the "bankruptcy

adversary proceeding" that it would be appropriate to consolidate the cases.

Defendants' Reply brief at 19.

### Analysis

Although the defendants raise many valid points,[4] under the standards governing this court's review of the defendants' motion to dismiss for improper venue, *see Jet–Pro Company, Inc. v. Sweet Manufacturing Co., Inc.*, No. 93–4059–SAC, 1993 WL 463512, at *8, 1993 U.S.Dist. LEXIS 15856, at *21 (D.Kan. October 27, 1993) ("The court has essentially the same discretion on procedures governing a motion to dismiss for improper venue as it does when considering a motion to dismiss for lack of personal jurisdiction."), the court concludes, albeit narrowly, that Kansas is an appropriate venue. Notwithstanding this conclusion, the court is convinced that Virginia is the more convenient forum.

### Change of Venue

Title 28, section 1404(a) provides:

> (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The Tenth Circuit recently summarized the rules pertaining to change of venue pursuant to 28 U.S.C. § 1404(a):

> Congress enacted 28 U.S.C. § 1404(a) in 1948 "as a 'federal housekeeping measure,' allowing easy change of venue within a unified federal system." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254, 102 S.Ct. 252, 265, 70 L.Ed.2d 419, (1981) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 613, 84 S.Ct. 805, 808, 11 L.Ed.2d 945, (1964)).... Although drafted in accordance with the *forum non conveniens* doctrine, the statute was intended to revise rather than merely codify the common law. Courts therefore enjoy greater discretion to transfer a cause pursuant to § 1404(a) than to dismiss the action based upon *fo-rum non conveniens*.[n3] *Piper Aircraft*, 454 U.S. at 253, 102 S.Ct. at 264.

The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient. *Texas E. Transmission Corp. v. Marine Office–Appleton & Cox Corp.*, 579 F.2d 561, 567 (10th Cir.1978); *Wm. A. Smith Contracting v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir.1972). But § 1404(a) does not allow a court to transfer a suit to a district which lacks personal jurisdiction over the defendants, even if they consent to suit. *See Hoffman v. Blaski*, 363 U.S. 335, 343–44, 80 S.Ct. 1084, 1089–90, 4 L.Ed.2d 1254 (1960); *Morris v. Peterson*, 759 F.2d 809, 812 (10th Cir. 1985). Moreover, when a case is transferred under § 1404(a), the transferee court must apply the same law as applicable in the transferor court, irrespective of whether the transfer was sought by the plaintiff or defendant. *Ferens v. John Deere Co.*, 494 U.S. 516 [527–33], 110 S.Ct. 1274, 1282–84, 108 L.Ed.2d 443 (1990).

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen*, 376 U.S. at 622, 84 S.Ct. at 812), to change of venue pursuant to 28 U.S.C. § 1404(a):

> Among the factors [a district court] should consider is the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court

---

4. Although not argued by any of the parties, it would appear that Kansas would be an appropriate venue for each of the corporate RICO defendants. *See Obee v. Teleshare, Inc.*, 725 F.Supp. 913, 916–917 (E.D.Mich.1989) (By virtue of RICO's nationwide service of process provision, venue over corporate RICO defendant proper under 28 U.S.C. § 1391(c)).

determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Texas Gulf Sulphur Co. v. Ritter,* 371 F.2d 145, 147 (10th Cir.1967).

[n3] Section 1404(a) transfers must be distinguished from transfers carried out under 28 U.S.C. § 1406(a). In the case of § 1404(a), both the transferor and the transferee court have venue over the action; it is more efficient to prosecute the action in the latter court. Conversely, in the case of § 1406(a), the transferor court lacks venue and must transfer the action in order for it to proceed.

*Chrysler Credit Corp v. Country Chrysler, Inc.,* 928 F.2d 1509, 1515–1516 (10th Cir. 1991) (footnote omitted); *see Hill's Pet Products v. A.S.U., Inc.,* 808 F.Supp. 774 (D.Kan. 1992) (thorough discussion of the principles governing transfer of venue pursuant to § 1404(a)).

Based upon the information and arguments presented, the court concludes that it is appropriate to transfer this case to the Eastern District of Virginia, Alexandria Division. While disputed by the parties, the court is persuaded that the defendants have demonstrated that Virginia is a more convenient forum for the majority of witnesses that will potentially be called in this case. The court is also convinced that the interests of justice are better served by transferring this case to Virginia.

In reaching this decision, the court is aware of the rule that the plaintiff's choice of forum is generally given great deference. *See Scheidt v. Klein,* 956 F.2d 963, 965 (10th Cir.1992) ("Unless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed.") (quoting *William A. Smith Contracting Co. v. Travelers Indem. Co.,* 467 F.2d 662, 664 (1972)); *M.K.C. Equipment Co., Inc. v. M.A.I.L. Code, Inc.,* 843 F.Supp. 679, 683 (D.Kan.1994) ("Generally, the plaintiff's choice of forum is given great deference. The burden on the party seeking to overcome the preference for the plaintiff's chosen forum is significant."). The court is also aware that in many cases a transfer to another district would merely shift the burden from one party to the other, and therefore there is no benefit to transferring the case. *See, e.g., Lodgistix, Inc. v. Tollman–Hundley Hotels Corp.,* No. 90–1387–C, 1991 WL 241176, 1991 U.S.Dist. LEXIS 16025 (D.Kan. Oct. 31, 1991) (court denies defendant's request to transfer to another district where transfer would do little more than shift the inconvenience to the plaintiff).

■ Notwithstanding these general rules, each case must be decided on its specific facts. Although Kansas is an appropriate venue, it appears, having weighed all of the applicable factors, that Virginia is a substantially more convenient forum. The defendants have demonstrated that it would be extremely burdensome and expensive to defend this case in Kansas. Conversely, the plaintiff appears to suffer comparatively negligible harm by this transfer. The defendants' arguments regarding the pending adversary proceeding in the Kansas bankruptcy court are well-taken. Although AH filed its response to the defendants' motion to dismiss on April 11, 1995, no motion to withdraw reference has yet been filed. In short, AH's unsupported arguments are insufficient to withstand the weight of the factors favoring transferring this case to Virginia.

IT IS THEREFORE ORDERED that the defendants' motion to dismiss complaint due to improper venue (Dk. 21) is granted in part and denied in part. The defendants' motion to dismiss for improper venue is denied. The defendants' alternative request for a transfer to the United States District Court for the Eastern District of Virginia, Alexandria Division pursuant to 28 U.S.C. § 1404(a) is granted.

IT IS FURTHER ORDERED that the clerk shall transmit the court file along with a copy of this order to the United States District Court for the Eastern District of Virginia, Alexandria Division pursuant to 28 U.S.C. § 1404(a).

IT IS FURTHER ORDERED that the defendants' motion to dismiss complaint (Dk. 19) is denied as moot.

### MEMORANDUM AND ORDER ON MOTION TO ALTER OR AMEND

■ On September 6, 1995, this court entered a memorandum and order granting the

defendants' motion to transfer venue. Pursuant to the court's order, this case was transferred to the United States District Court for the Eastern District of Virginia, Alexandria Division. The plaintiff did not seek a stay of the court's transfer order. On September 21, 1995, the plaintiff filed a motion to alter and amend the court's order transferring venue (Dk. 77). Because the case has been transferred to another district, this court is without jurisdiction to consider the plaintiff's motion. *See Database America v. Bellsouth Advertising & Pub.,* 825 F.Supp. 1216, 1222–1223 (D.N.J.1993).

IT IS THEREFORE ORDERED that the plaintiff's motion to alter or amend (Dk. 77) is dismissed for lack of jurisdiction.